DAVID T. PROSSER, J.
¶ 1. This is a review of an unpublished opinion and order of the court of appeals,[1] which summarily reversed a grant of summary judgment in favor of Exxon Mobil Corp. et al., by the Eau Claire County Circuit Court, Lisa K. Stark, Judge.
¶ 2. The case involves the viability of certain wrongful death and survival claims. It is part of a larger tort suit filed in 2006 by former employees and the estates and beneficiaries of former employees at an Eau Claire tire manufacturing plant. The tort suit alleged that the former employees' injuries and deaths resulted from their exposure to benzene in the workplace. This appeal relates to the summary judgment entered against eight plaintiffs on grounds that their claims were filed too late.
¶ 3. The defendants, Exxon Mobil Corp. et al.,[2] contend that the claims of these plaintiffs were not filed before the expiration of the three-year statute of *675 limitations set forth in Wis. Stat. § 893.54(2) (2005-06). They contend that, under Wisconsin law, the plaintiffs' claims could not have accrued later than the deaths of the decedents they represent because the discovery rule in wrongful death and survival claims does not extend to "third parties," that is, parties other than the decedents. Thus, they argue, the statute of limitations began to run more than three years before any of the plaintiffs in this appeal filed their claims.
¶ 4. The plaintiffs counter that their claims did not accrue until they had reason to believe that the defendants were responsible for the injuries giving rise to their claims. They assert that Wisconsin's judicially created discovery rule applies to both survival claims and wrongful death claims in such a way that the claims may accrue later than a decedent's death if an appropriate third party's discovery of the claim is reasonable. They argue that there is no law that limits this application of the discovery rule.
¶ 5. We agree with the plaintiffs and hold that the discovery rule permits the accrual of both survival claims and wrongful death claims after the date of the decedent's death. In the absence of a legislatively created rule to the contrary, claims accrue when there is a "claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." Emp'rs Ins. of Wausau v. Smith, 154 Wis. 2d 199, 231, 453 N.W.2d 856 (1990) (quoting Barry v. Minahan, 127 Wis. 570, 573, 107 N.W. 488 (1906)). These criteria are not met "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Borello v. U.S. Oil Co., 130 Wis. 2d 397, 411, 388 N.W.2d 140 *676 (1986). See also Carlson v. Pepin Cnty., 167 Wis. 2d 345, 352-53, 481 N.W.2d 498 (Ct. App. 1992) ("Under the discovery rule, a cause of action accrues when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered his injury, its nature, its cause and the identity of the allegedly responsible defendant.").
¶ 6. In the circumstances of this case, the applicable statute of limitations began to run when the survival claims and wrongful death claims were discovered, provided that the plaintiffs are able to show that they exercised reasonable diligence in investigating and discovering their claims.
¶ 7. Given the procedural posture of this case, the plaintiffs have not yet demonstrated that their claims accrued less than three years before they filed their complaint. Accordingly, we affirm the court of appeals and remand to the circuit court for a determination as to whether the plaintiffs have satisfied the statute of limitations under our accrual rule.
I. FACTUAL AND PROCEDURAL BACKGROUND
¶ 8. The relevant facts are undisputed. On July 13, 2006, multiple parties (the initial plaintiffs)[3] filed suit against multiple defendants (the initial defendants) in the Eau Claire County Circuit Court. The complaint alleged that the initial plaintiffs were employed at an Eau Claire tire manufacturing facility *677 operated by the Uniroyal Goodrich Tire Company Inc.[4] The complaint alleged that during the course of their employment, the initial plaintiffs were exposed to benzene and benzene-containing products. The complaint further alleged that as a result of their exposure to benzene and benzene-containing products, the initial plaintiffs were injured and, in some cases, died. The initial plaintiffs sought unspecified damages on the theories of negligence, strict liability, and failure to warn.
¶ 9. In due course, the initial defendants individually answered the complaint and denied liability for the alleged injuries. Two of the initial defendants —Hovland's, Inc. and Shell Canada, Ltd. — also filed cross-claims against certain co-defendants, leading those parties to file answers to the cross-claims as well.
I 10. On December 28, 2007, an amended complaint was filed. The amended complaint added nine parties as plaintiffs[5] and three corporations as defendants. From 2008 through 2011, various filings not pertinent to this appeal were made in the case resulting in the dismissal of certain defendants.
¶ 11. On March 5, 2012, the remaining defendants moved for dismissal of the complaints of eight of *678 the plaintiffs.[6] This motion was based in part on Wis. Stat. § 893.54 (2005-06), which bars recovery for survival and wrongful death claims filed more than three years after accrual. The defendants contended that the eight plaintiffs' claims could have accrued no later than the time of the decedents' deaths, and because the decedents died more than three years prior to the filing of the complaints,[7] the plaintiffs' claims were time-barred.
¶ 12. On March 27, the plaintiffs filed a brief opposing dismissal. They argued that the discovery rule delayed accrual of their claims until they knew or reasonably should have known of their injuries and of the defendants' role in those injuries. They contended that, at the very least, material issues of fact remained as to when their claims accrued.
¶ 13. The Eau Claire County Circuit Court held a motion hearing on April 30, 2012.[8] After both sides presented their arguments, the court — expressing substantial difficulty with the state of the law — granted the motion. The court relied on Miller v. Luther, 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992), and Estate of Merrill ex rel. Mortensen v. Jerrick, 231 Wis. 2d 546, 605 N.W.2d 645 (Ct. App. 1999), to deter *679 mine that the plaintiffs' claims had accrued at death, and were therefore barred by the statute of limitations.
¶ 14. The court of appeals summarily reversed the circuit court's grant of summary judgment. Christ v. Exxon Mobil Corp., No. 2012AP1493, unpublished order (Wis. Ct. App. Feb. 12, 2014). The court relied on its earlier decision in Beaver v. Exxon Mobil Corp., No. 2012AP542, unpublished slip op. (Wis. Ct. App. May 9, 2013), which presented nearly identical facts with different plaintiffs. The court stated: "The discovery rule provides that the statute of limitations begins to run when the plaintiff discovers or should have discovered the injury and that the injury may have been caused by the defendant." Christ, No. 2012AP1493, at 3 (citing Doe v. Archdiocese of Milwaukee, 211 Wis. 2d 312, 335, 565 N.W.2d 94 (1997)). The court did not make a determination as to whether the plaintiffs' claims were in fact timely, but remanded the case to the circuit court for further proceedings.
¶ 15. The defendants moved for reconsideration of the court of appeals' decision, claiming that the circuit court already had applied the discovery rule. The court of appeals denied the motion. The defendants then petitioned this court for review, which we granted on October 6, 2014.
II. STANDARD OF REVIEW
¶ 16. We are asked to review the circuit court's grant of summary judgment. "We review a decision on a motion for summary judgment independently, employing the same methodology as the circuit court." Estate of Genrich v. OHIC Ins. Co., 2009 WI 67, ¶ 10, 318 Wis. 2d 553, 769 N.W.2d 481. Making that deter- *680 ruination in this case requires us to decide the correct legal standard for accrual for courts to apply to survival and wrongful death claims. This involves questions of law and the interpretation of statutes, both of which this court reviews de novo. State v. Williams, 2014 WI 64, ¶ 16, 355 Wis. 2d 581, 852 N.W.2d 467; GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 470, 572 N.W.2d 466 (1998).
¶ 17. We are also asked to review the court of appeals' summary disposition of this case. The court of appeals has the power to summarily reverse a circuit court's decision. Wis. Stat. § (Rule) 809.21.[9] The defendants contend, however, that the summary disposition of their appeal violated their constitutional rights. Whether a party's constitutional right was violated is a question of constitutional fact. This court's review of questions of constitutional fact follows a two-step process. State v. Jennings, 2002 WI 44, ¶ 20, 252 Wis. 2d 228, 647 N.W.2d 142 (citing State v. Henderson,, 2001 WI 97, ¶ 16, 245 Wis. 2d 345, 629 N.W.2d 613). First, we accept findings of fact unless they are clearly erroneous. Id. Then, we apply constitutional principles to those facts de novo. Id.
III. DISCUSSION
A. Wrongful Death and Survival Claims
¶ 18. We begin with a brief history of the types of claims at issue in this case.[10] At common law, tort claims died if either the victim or the tortfeasor died *681 before the victim recovered damages. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 125A, at 940 (5th ed., lawyer's ed. 1984). In addition, family members of deceased victims had no cause of action for the loss of financial support or companionship incurred as a result of the death of their relatives. Id. However, these early common law rules have since been altered.
¶ 19. Damages for injuries sustained by a tort victim prior to his death now survive in what is known as a survival action. In Wisconsin, statutory survival actions date back to at least 1839. See § 44, Statutes of the Territory of Wisconsin 1839. Survival actions are not new actions created by the death of the victim. They are actions that the victim would have had available to him if he had survived. See Miller, 170 Wis. 2d at 436.
¶ 20. Survival actions are brought by the decedent's personal representative to benefit the decedent's estate. Brown v. Chicago & Nw. Ry. Co., 102 Wis. 137, 140-42, 77 N.W. 748 (1898). Statutory survival actions exist under Wis. Stat. § 895.01(l)(am), which states that "[i]n addition to the causes of action that survive at common law," certain other types of actions survive as well. Personal injury actions seeking damages for a decedent's injuries suffered before death fall under the category of "other damage to the person" in Wis. Stat. *682 § 895.01(l)(am)7. (formerly Wis. Stat. § 895.01(1) (1979-80)). See Wangen v. Ford Motor Co., 97 Wis. 2d 260, 310, 294 N.W.2d 437 (1980). "An action does not abate by the occurrence of any event if the cause of action survives or continues." Wis. Stat. § 895.01(2).
¶ 21. Certain relatives of tort victims are now also able to bring actions for wrongful death. Wrongful death actions were created by statute in chapter 7, Laws of 1857. "A wrongful death claim refers to the statutory cause of action belonging to named persons for injuries suffered postdeath." Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶ 55, 293 Wis. 2d 38, 717 N.W.2d 216. Since 1931, wrongful death plaintiffs have been able to seek damages for loss of society and companionship. See § 2, ch. 263, Laws of 1931.[11]
¶ 22. Wrongful death actions are derivative tort actions. Ruppa v. Am. States Ins. Co., 91 Wis. 2d 628, 646, 284 N.W.2d 318 (1979). Thus, even though the wrongful death statute creates a "new action" and "allows a person to recover his or her own damages sustained because of the wrongful death of another," Miller, 170 Wis. 2d at 435-36, the person's right of action depends not only upon the death of another *683 person but also upon that other person's entitlement to maintain an action and recover if his death had not occurred.
¶ 23. Stated differently, for a wrongful death claim to exist, the decedent must have had a valid claim for damages against the defendant at the time of his death. Id. at 439-40. See also Wis. Stat. § 895.03. If the decedent would have been barred from making a claim, the decedent's statutory beneficiary also would be barred. To illustrate, if a party signed a liability waiver before engaging in a dangerous activity and was subsequently killed while participating in that activity, the liability waiver would preclude the wrongful death claims of the decedent's statutory beneficiaries. See Ruppa, 91 Wis. 2d at 646.
¶ 24. Although survival actions and wrongful death actions are commonly intertwined, they are distinct. Often times, the same party will seek recovery for both survival claims and wrongful death claims. However, a party need not seek to recover for both. Indeed, different parties might file a wrongful death action and a survival action, respectively, for the death of one person. See Bartholomew, 293 Wis. 2d 38, ¶ 59. In short, "[t]he two claims are separate claims for separate injuries that may belong to different people." Id., ¶ 54.
B. The Discovery Rule
¶ 25. As noted above, the court has stated that a cause of action accrues when three conditions are present: (1) a claim capable of enforcement, (2) a party against whom the claim may be enforced, and (3) a *684 party with the right to enforce the claim. Barry, 127 Wis. at 573. In Hansen v. A.H. Robins Co., 113 Wis. 2d 550, 554, 335 N.W.2d 578 (1983), the court observed that "there are three points in time when a tort claim may be said to accrue: (1) when negligence occurs, (2) when a resulting injury is sustained, and (3) when the injury is discovered." Traditionally, most tort claims have been treated as accruing on the date of injury because claimants usually are aware of their injuries when they occur. However, because tort victims sometimes are unaware of injuries when they happen, strict adherence to this general rule "can yield extremely harsh results" if a tort victim discovers his injury after the statute of limitations has run. Id. at 556.
¶ 26. Hansen involved a question certified to this court by the United States Court of Appeals for the Seventh Circuit. Id. at 551. Kathleen Hansen had a "Daikon Shield" intrauterine device (IUD) inserted by Dr. Fabiny in May 1974. Near the end of May 1978, she began to have significant health issues. On June 13, she visited Dr. Macken, who examined her and told her it was unlikely she had pelvic inflammatory disease (PID). On June 26, she visited Dr. Fabiny, who removed her IUD and concluded that she probably did have PID. Id. at 552-53.
¶ 27. On June 24, 1981, Hansen sued the IUD manufacturer — A.H. Robins Company — in federal court, seeking recovery for her injuries. Id. A.H. Robins moved for summary judgment, claiming that the three-year statute of limitations on Hansen's claim had expired. The district court concluded that Hansen had been injured sometime before June 13, 1978. Because Hansen filed suit more than three years after that date, the United States District Court granted the *685 motion for summary judgment. Hansen appealed, and the Seventh Circuit certified a question of law to this court. Id.
¶ 28. In considering whether to institute a discovery rule for tort actions in Wisconsin, this court noted that "[tjhere are two conflicting public policies raised by the statute of limitations: '(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained.'" Id. at 558 (quoting Peterson v. Roloff, 57 Wis. 2d 1, 6, 203 N.W.2d 699 (1973)). Although the prompt adjudication of tort claims is a highly desirable goal, the court continued, a discovery rule would not create an intolerable risk of defendants being subjected to stale or fraudulent claims. Id. at 559. The court noted that defendants would still be protected by the requirement that plaintiffs prove their claims at trial, as well as the fact that claims would accrue when injuries were discovered or reasonably should have been discovered. Id. The court also noted that the lack of a discovery rule sometimes allowed wrongdoers to escape liability by barring meritorious claims. Id.
¶ 29. In what has become a landmark decision authored by Justice William Callow, a unanimous court "conclude [d] that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." Id. Accordingly, the court established the discovery rule for all tort claims not specifically covered by a legislatively created rule. The court stated: "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever *686 occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled." Id. at 560.
¶ 30. Given that Hansen did not involve a death, it is not surprising that the opinion made no mention of the specific issues that now confront this court. The court did not discuss whether the injured party or decedent was the only person who could discover an injury. What it did discuss was the balance of equities, the court's power to establish when claims accrue, and the fact that other than for medical malpractice claims, "the Wisconsin statutes do not speak" to the issue. Id. at 559-60.
¶ 31. The court discussed the import of Hansen five years later in Borello. The court said that "Hansen stands for the proposition that mere knowledge of the fact of an injury and nothing more will not trigger the commencement of the period of limitations." Id. at 409. The court determined that for a claim to accrue, the plaintiff would have to discover, or in the exercise of reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Id. at 411. The court noted that this approach did not change the law, but "merely look[ed] at the cause of action in a new light that is more likely to produce a just result." Id. at 421.
¶ 32. In short, the basis for this court's adoption of the discovery rule was, and remains, public policy. Therefore, if the legislature has not superseded the discovery rule by statute for a particular tort, the discovery rule will continue to apply to claims for that tort in a way that protects the public policy considerations set forth in Hansen and Borello.
*687 C. Applicability of the Discovery Rule
¶ 33. As a preliminary matter, we note that the parties do not dispute whether the discovery rule applies to both wrongful death claims and survival claims; both parties agree that it does. Rather, the parties differ about the manner in which the discovery rule applies — specifically, whether the rule applies to discovery by persons other than decedents. Although the parties' arguments sometimes conflate wrongful death claims and survival claims for purposes of this analysis, the different characteristics of each type of claim make it appropriate to discuss them separately. We therefore address each type of claim in turn.
1. Wrongful Death Claims
¶ 34. Eight decades ago, this court stated that wrongful death claims accrue at death. Terbush v. Boyle, 217 Wis. 636, 259 N.W. 859 (1935). Terbush followed George v. Chicago, Milwaukee & St. Paul Railway Co., 51 Wis. 603, 604, 8 N.W. 374 (1881), and it, in turn, was followed by Holifield v. Setco Industries, Inc., 42 Wis. 2d 750, 757, 168 N.W.2d 177 (1969). Those cases, however, were decided before Hansen's adoption of the discovery rule "for all tort actions other than those already governed by a legislatively created discovery rule." Hansen, 113 Wis. 2d at 560.
¶ 35. As noted, the Hansen court declared that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled." Id. Given the rigid construction of the rule in Terbush and the broad holding in Hansen, Hansen might well be read as overruling Terbush.
*688 ¶ 36. In this appeal, the defendants' wrongful death defense rests in part on the continuing viability of the Terbush rule. The defendants offer Genrich as evidence of "the continued force of Terbush in non-medical malpractice wrongful death cases." The relevant part of Genrich stated:
We acknowledge that some of our past decisions, outside of the medical malpractice context, could be interpreted to conclude that claims for damages due to wrongful death accrue on the date of the decedent's death. See, e.g., Terbush v. Boyle, 217 Wis. 636, 640, 259 N.W. 859 (1935), overruled on other grounds, Pufahl v. Williams, 179 Wis. 2d 104, 111, 506 N.W.2d 747 (1993) (interpreting a former statute of limitations consistent with an even earlier statutory provision that provided," 'every such action shall be commenced within two years after the death of such deceased person'").
Genrich, 318 Wis. 2d 553, ¶ 32.
¶ 37. The defendants' reliance on Genrich is unavailing. Genrich involved a death in a medical malpractice case. The operative statute of limitations was Wis. Stat. § 895.55(lm)(a). The spouse of the decedent sought to establish the death of the decedent as the date of accrual under Wis. Stat. § 893.54(2). The court determined that the statute did not apply in a medical malpractice case. The court's references to Terbush in Genrich were in a context distinguishing one fact situation from another. The discussion did not determine whether accrual of a wrongful death claim could occur after the decedent's death. That decision was made in Hansen and Borello.
¶ 38. The defendants also argue that the court of appeals in this case "scrapped the derivative nature of wrongful death claims .... If a beneficiary's discovery *689 can resurrect a decedent's survival claim, then a wrongful death claim is not truly derivative. Instead, it controls the survival claim." We disagree.
¶ 39. Defendants concede that the discovery rule applies to wrongful death claims. They contend, however, that the discovery rule applies only to decedents —that no third party is capable of discovering the necessary elements of a wrongful death and establishing its date of accrual.
¶ 40. We turn to an example that surfaced in oral argument to test the defendants' position. X is killed instantly by a negligent driver in a hit and run accident. X's beneficiaries have at least three years to file a wrongful death claim under Wis. Stat. §§ 895.03, 895.04, and 895.54(2). Under these hypothetical facts, X could not have brought a claim at the time of his death because he did not know the identity of the negligent driver. Thus, only a third party would be able to discover the hit and run driver's identity to facilitate a claim.
¶ 41. If X's personal representative or statutory beneficiary filed the claim within three years of death, there would be no dispute whatsoever about what the decedent knew at the time of death — it would not matter.
¶ 42. There would, however, be an issue if the personal representative or beneficiary did not file within the three-year period following the decedent's death. And there would be an issue if the personal representative or beneficiary did not discover the identity of the hit and run driver until after the three-year period.
¶ 43. Defendants cannot argue about how the information was discovered if it was discovered and acted upon within three years of death. They must *690 contend that the date of accrual is always the decedent's date of death and that the three-year statute of limitations may not be triggered by a later discovery.
¶ 44. We do not see this reasoning as consistent with the compelling policy arguments made and adopted in Hansen. Under the defendant's theory, if a deceased person's wrongful death beneficiaries did not discover the identity of the hit and run driver until a week after the three-year period ended, they would be unable to recover any of the damages enumerated in Wis. Stat. § 895.04(4), which are their damages. Conversely, the hit and run driver would be rewarded for killing the victim instead of badly injuring him, and he would not have to show that the passage of time had created difficulties in defending the case. This is not just.
¶ 45. We do not think the court of appeals was wrong when it concluded that a wrongful death claim for a 1980 homicide accrued when the decedent's killer was finally charged with the crime in 2009. See McIntyre v. Forbes, No. 2013AP611, unpublished slip op., ¶¶ 8, 10 (Wis. Ct. App. Dec. 19, 2013). And we do not think that the court of appeals was wrong here.
¶ 46. None of this changes the derivative nature of a wrongful death claim. A wrongful death action is a cause of action for the benefit of designated classes of relatives, "enabling them by statute to recover their own damages caused by the wrongful death of the decedent." Miller, 170 Wis. 2d at 435 (citing Brown, 102 Wis. at 140). It is a new action. Id. at 436. However, the plaintiff in a wrongful death action has no claim if the decedent would not have been able to "maintain an action and recover damages" in his own right if he had not died. Wis. Stat. § 895.03. What this *691 means is that "if death had not ensued," a deceased person would still have been alive and able to discover all the elements of the tort that resulted in his death. Thus, the beneficiary in a wrongful death action is simply recognizing and establishing a claim that is based on the claim that the decedent would have made if the decedent were still alive.
¶ 47. We conclude that the discovery rule continues to apply to wrongful death claims in the only way in which it reasonably can: by permitting those claims to accrue "on the date the injury is discovered or with reasonable diligence should be discovered" by the wrongful death beneficiary, "whichever occurs first." Hansen, 113 Wis. 2d at 560.
2. Survival Claims
¶ 48. As with wrongful death claims, the defendants do not argue that the discovery rule does not apply to survival claims. They argue that survival claims focus on discovery of an injury by the decedent, not by a third party, and therefore that the survival claims can accrue no later than death.
¶ 49. Contrary to a wrongful death action, "[t]he survival action ... is not a new cause of action. It is rather the cause of action held by the decedent immediately before or at death, now transferred to his personal representative." Bartholomew, 293 Wis. 2d 38, ¶ 58 (quoting Keeton et al., supra, § 126, at 942-43). In other words, upon the death of the decedent, the decedent's personal representative "stands in the shoes" of the decedent to pursue any claims the decedent may have had. See Merrill, 231 Wis. 2d at 554.
*692 ¶ 50. With respect to survival claims, the question facing the court is whether the personal representative similarly "stands in the shoes" of the decedent for purposes of the discovery rule. We conclude that it does.
¶ 51. This court's opinion in Hansen was broad in its language. It applied to all tort claims, including survival claims — a fact the defendants do not dispute —and it was grounded in public policy. We can discern no public policy reason to require survival claims to accrue before death or upon death but not after death that would outweigh the public policy reasons for permitting survival claims to accrue upon reasonable discovery after death. As Professor Dobbs states:
The discovery rule is now familiar in personal injury statute of limitations cases. It logically applies as well in survival actions, which are merely continuations of the personal injury claim, although there is some dissent. In the survival context, the main question is whether suit was brought within the prescriptive period after the decedent discovered or should have discovered the facts considered relevant in the particular jurisdiction.
2 Dan B. Dobbs, The Law of Torts § 379, 528-29 (2d ed. 2011) (footnotes omitted).
¶ 52. The defendants point to two cases, Merrill, 231 Wis. 2d 546, and Lord v. Hubbell, Inc., 210 Wis. 2d 150, 563 N.W.2d 913 (Ct. App. 1997), which, they suggest, require a different result.
¶ 53. Merrill involved a single-car accident in which Shawn Merrill was seriously injured. Three days later, on November 26, 1994, Merrill succumbed to his injuries and died. On November 26, 1997 — three years to the day after his death — Merrill's estate filed suit against the driver of the vehicle, Joseph Jerrick, *693 for pain and suffering and medical expenses incurred by Merrill during the three days following the accident. Jerrick moved for summary judgment, arguing that the statute of limitations expired three years after the date of the accident, not three years after the date of Merrill's death. The circuit court agreed and granted summary judgment.
¶ 54. The court of appeals reversed and remanded. Id. at 558. The court determined that there was an issue of material fact as to when Merrill's claim accrued because the record did not indicate "when Merrill, with reasonable diligence, would have discovered his injury, its cause and the defendants' identities." Id. at 553. Given the physical and mental handicaps suffered by Merrill in the accident, the court determined that it was unclear whether Merrill was aware of what happened. Thus, the court "conclude [d] that the estate's survival claim accrued when Merrill with reasonable diligence should have discovered his claim, here, no later than his date of death when his claim vested with the estate's personal representative." Id. at 557.
¶ 55. There are at least two explanations for the court's "no later than his date of death" language. First, Merrill's personal representative had all the information necessary for a survival claim — the fact of the injury, the cause of the injury, and the identity of the defendant — at the time of Merrill's death. There was no issue about discovery after death and no need to opine about discovery after death. The issue in the case was whether "discovery" or accrual occurred before death or at death. The language of the case should be read in that light, since the next sentence reads: "The record leaves room for controversy concerning when a reasonable person with the same degree of *694 mental and physical handicap and under the same or similar circumstances as Merrill should have discovered his injury, its cause, its nature and the defendants' identities." Id. at 557. Second, the author of the opinion, Chief Judge Thomas Cane, also authored the opinion in Miller v. Luther and cited the Miller opinion in Merrill. The Miller opinion, dated 1992, stated that "a wrongful death action accrues at the time of the decedent's death." Miller, 170 Wis. 2d at 436 (citing Terbush, 217 Wis. 2d at 640). The language in Merrill may simply echo the writing in Miller, restating a rule that has become defunct.
¶ 56. For all practical purposes, Terbush was overruled by Hansen and Borello, and it is expressly overruled here.
¶ 57. The second case is Lord. The defendants claim that Lord proves that the focus in a survival claim is on the circumstances of the decedent, rather than on the circumstances of the third party who eventually brings the claim.
¶ 58. Lord did not involve a determination of when a claim accrued. The case involved plaintiffs who were the minor children of a decedent who was electrocuted while at work. Lord, 210 Wis. 2d at 155. The plaintiffs argued that the survival claim was tolled until they reached the age of majority; the court of appeals disagreed. There was no discussion of when the claim accrued in Lord — the accrual of the claim was undisputed — so Lord does not assist us in determining when a claim might have accrued in this case.
¶ 59. The defendants also contend that because the plaintiffs are bringing suit in this case as special administrators, not personal representatives, their personal knowledge of the discovery of the decedents' injuries is even less relevant. This argument misses *695 the point. The question in this case is whether the survival claims could have accrued after the death of the decedents. Once those claims have accrued, it does not matter which party brings the claim, as long as that party has the authority to do so.
¶ 60. In other words, simply because a party brings a claim as a special administrator does not necessarily mean that a court will look for that party's discovery as special administrator; the reference point after the death of a decedent will need to be determined on a case-by-case basis. In many cases, the court will look to the personal representative's knowledge. In some cases, it might be appropriate to look to the special administrator's knowledge. Sometimes, the appropriate inquiry might even be into the knowledge of a party that is neither the personal representative nor the special administrator. The key is for the court to identify the party whose knowledge is most relevant to meeting the goals set forth in Hansen and Borello and determine what that party's knowledge means in terms of the accrual of the claim. Once the claim has accrued, it may then be brought by whomever has the authority to bring it.
¶ 61. The defendants warn that a parade of horribles is sure to follow if courts look to third parties when applying the discovery rule. It is true that this application of the rule could permit the occasional stale claim to proceed. However, that risk is offset by the other protections in place to combat stale claims.
¶ 62. In sum, because the personal representative "stands in the decedent's shoes" for purposes of pursuing survival claims on behalf of the decedent's estate, the discovery rule makes it possible for those claims to accrue after the decedent's death. Survival *696 claims accrue "on the date the injury is discovered or with reasonable diligence should be discovered" by either the decedent or an appropriate third party (often the decedent's personal representative), "whichever occurs first." Hansen, 113 Wis. 2d at 560.
¶ 63. We acknowledge that not all states apply the discovery rule to wrongful death and survival claims in the way it is applied here. However, we believe our decision reflects a clear trend in the cases and is fully supported by the decisions in Hansen and Borello.
D. Caveats for Plaintiffs
¶ 64. The broad applicability of the discovery rule does not guarantee that plaintiffs receive an advantage in tort cases. In most cases, plaintiffs will benefit from filing their claims sooner rather than later. We emphasize the following points.
¶ 65. First, the discovery rule requires reasonable diligence on the part of the injured party. This requirement applies in various ways to decedents, personal representatives, special administrators, and wrongful death beneficiaries. For example, if a decedent, with reasonable diligence, should have discovered his injury — including the identity of the defendant — prior to his death, then any survival claims pursued on his behalf by his estate would have accrued prior to his death. Likewise, if the decedent's wrongful death beneficiary should have discovered the identity of the defendant shortly after the decedent's death, the beneficiary's actual knowledge will be irrelevant — the claim will accrue.
*697 ¶ 66. The burden is on the defendant to raise the statute of limitations as an affirmative defense. See Robinson v. Mount Sinai Med. Ctr., 137 Wis. 2d 1, 16-17, 402 N.W.2d 711 (1987). However, once the defense has been raised, the circuit court will need to determine whether the plaintiff has, in fact, satisfied the statute of limitations. See TJ Auto LLC v. Mr. Twist Holdings LLC, 2014 WI App 81, ¶¶ 14-15, 355 Wis. 2d 517, 851 N.W.2d 831. This may require the court to make a factual determination of when a claim accrued, including when the claim reasonably should have been discovered. As a practical matter, plaintiffs filing suit more than three years after a decedent's death will often have to make a showing that the delay in their discovery of the claim was reasonable.
¶ 67. Second, a plaintiff has the burden of proving his case. That burden is not relaxed in older cases kept alive by the discovery rule. A plaintiff will often find that proving his case has become more difficult because time has passed.
¶ 68. Third, the fact that the discovery rule is grounded in public policy considerations means that its application in a specific case may be weighed against competing public policy considerations. In the past, this court has identified six public policy considerations that courts may use to limit liability:
(1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or *698 (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point.
Cole v. Hubanks, 2004 WI 74, ¶ 8, 272 Wis. 2d 539, 681 N.W.2d 147 (quoting Becker v. State Farm Mut. Auto. Ins. Co., 141 Wis. 2d 804, 817-18, 416 N.W.2d 906 (Ct. App. 1987)).
¶ 69. The fact that survival and wrongful death claims can accrue after death does not mean that those claims can always be pursued after an extended period of time. The discovery rule notwithstanding, requiring alleged tortfeasors to defend against very old claims may sometimes "place too unreasonable a burden" on those parties. See id. The discovery rule does not state that such claims will always proceed; it is up to the courts to balance the equities in such cases.
¶ 70. We make no determination as to the balance of the equities in this case. The record is not sufficiently developed for us to determine whether the defendants should have to defend against these claims. Rather, our decision is simply that it is possible that the plaintiffs' claims accrued after the deaths of the decedents.
E. Summary Disposition and Constitutional Claims
¶ 71. Finally, the defendants contend that the court of appeals' decision to summarily reverse the circuit court's grant of summary judgment violated their constitutional rights. The defendants' argument on this point does not seem to be fully developed, so we address it only briefly.
*699 ¶ 72. As the plaintiffs point out, the defendants' argument presupposes that the court of appeals was incorrect. Because the court of appeals was correct that the circuit court used the wrong legal standard in its application of the discovery rule to the facts of this case, the only question is whether the defendants' constitutional rights were somehow violated by the case being reversed summarily.
¶ 73. The court of appeals may dispose of a case summarily
by order if the panel unanimously agrees on the decision; unanimously agrees the issues involve no more than the application of well-settled rules of law or the issues are decided on the basis of unquestioned and controlling precedent or the issues relate to sufficiency of evidence or trial court discretion and the record clearly shows sufficient evidence or no abuse of discretion; and the issues may be resolved by merely stating the reasons for the decision without a detailed analysis.
Wis. Ct. App. IOP VI-1 (Nov. 30, 2009).
¶ 74. In this case, the court of appeals determined that its recent decision in Beaver, which presented the same legal question and nearly identical facts, made this case appropriate for summary disposition. See Christ, No. 2012AP1493, at 3. Given the court's recent ruling in Beaver, we see no reason why this case was not appropriate for summary disposition. Accordingly, we hold that summary disposition did not violate the defendants' constitutional rights.
IV. CONCLUSION
¶ 75. We hold that the discovery rule permits the accrual of both survival claims and wrongful death *700 claims to occur after the date of the decedent's death. In the absence of a legislatively created rule to the contrary, these claims accrue when there is a "claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." Emp'rs Ins. of Wausau, 154 Wis. 2d at 231 (citation omitted). These criteria are not met "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." Borello, 130 Wis. 2d at 411.
¶ 76. In the circumstances of this case, the applicable statute of limitations began to run when the survival claims and wrongful death claims were discovered, provided that the plaintiffs are able to show that they exercised reasonable diligence in investigating and discovering their claims.
¶ 77. Given the procedural posture of this case, the plaintiffs have not yet demonstrated that their claims accrued less than three years before they filed their complaint. Accordingly, we affirm the court of appeals and remand to the circuit court for a determination as to whether the plaintiffs have satisfied the statute of limitations under our accrual rule.
By the Court. — The decision of the court of appeals is affirmed.

 Christ v. Exxon Mobil Corp., No. 2012AP1493, unpublished order (Wis. Ct. App. Feb. 12, 2014).

 For the sake of simplicity, we refer to the petitioners here, collectively, as "defendants" and the respondents here, collectively, as "plaintiffs." The parties have followed these designations throughout the litigation.

 Three of these parties are relevant to this appeal: Arlene Christ; Donald Christ, individually and as special administrator of the Estate of Gail Christ; and Jacqueline Radosevich, individually and as special administrator of the Estate of Gary Radosevich.

 In the case of the Christs and Radosevich, the decedents they represented had been the ones employed at the manufacturing facility.

 Five of the nine parties are relevant to this appeal: Mary Jane Beaulieu, individually and as special administrator of the Estate of William J. Beaulieu; Paul Clark, individually and as special administrator of the Estate of Sharon Ann Clark; Betty Grosvold, individually and as special administrator of the Estate of Victor M. Grosvold; Dianne Pederson, individually and as special administrator of the Estate of Mae H. Heath; and Carrie Duss, individually and as special administrator of the Estate of Mary Henneman.

 The motion to dismiss eight of the plaintiffs concerned the complaints related to the following seven deceased former employees: William Beaulieu, Gail P. Christ, Sharon Ann Clark, Victor M. Grosvold, Mae H. Heath, Mary Henneman, and Gary Radosevich (collectively, the decedents).

 According to the defendants, William Beaulieu died in 1997, Gail Christ died in 2002, Sharon Clark died in 2001, Victor Grosvold died in 2003, Mae Heath died in 1996, Mary Henneman died in 1995, and Gary Radosevich died in 1999. The plaintiffs have not disputed these dates.

 The court treated the defendants' motion to dismiss as a motion for summary judgment.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 This court has discussed the history of survival and wrongful death claims many times in the past, and a full *681 recitation of that history is not necessary here. For a more in-depth discussion of the history of these claims, see, e.g., Bartholomew v. Wisconsin Patients Compensation Fund, 2006 WI 91, ¶¶ 54-69, 293 Wis. 2d 38, 717 N.W.2d 216; Brown v. Chicago & Northwestern Railway Co., 102 Wis. 137, 140-42, 77 N.W. 748 (1898); Woodward v. Chicago & Northwestern Railway Co., 23 Wis. 400, 405-06 (1868).

 Damages for loss of society and companionship are now contained in Wis. Stat. § 895.04(4):
Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.