Martin A.BRUFLAT, Plaintiff-Appellant,

v.

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY,
Defendant.

Mary A. BRUFLAT, Defendant-Respondent.

Court of Appeals

*No. 99–2049–FT. Submitted on briefs October 13,
1999.—Decided February 2, 2000.*

2000 WI App 69

(Also reported in 608 N.W.2d 371.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Francis J. Slattery* of *Hughes, Mathewson, Carns & Slattery* of Oshkosh.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael P. Helgesen* of *Paige J. Donnelly, Ltd.* of St. Paul, Minnesota.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Martin A. Bruflat appeals from a summary judgment dividing the proceeds of an automobile insurance policy with his former wife, Mary A. Bruflat, following the death of their son Simon. Martin contends that because he is the named insured on the policy and Simon resided with him, he should be awarded 100% of the proceeds. Mary, on the other hand, argues that Wisconsin's wrongful death statute, WIS. STAT. § 895.04 (1997–98),[1] requires distribution of the proceeds to Simon's lineal heirs—his parents. We conclude that § 895.04 and the insurance policy authorize the wrongful death award to be paid to both of Simon's parents. We therefore affirm the circuit court's judgment.

## BACKGROUND

¶ 2. On September 13, 1998, Simon was killed in an automobile accident while driving Martin's Jeep Cherokee wagon. The other motorist involved was uninsured.

¶ 3. Prior to Simon's death, Martin and Mary were divorced and living in different residences. They had joint custody of Simon, but Simon lived with Martin.

¶ 4. After the automobile accident, Mary was appointed special administrator of Simon's estate. Mary then filed claims with Martin's automobile insurance carrier, Prudential Property & Casualty Insurance Company, seeking proceeds of the uninsured motorist (UM) protection contained in the policy. The policy provided $100,000 in UM coverage.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

¶ 5. On December 15, 1998, Martin filed this action requesting a declaratory judgment determining the allocation of Prudential's UM coverage. Martin was the named insured under the policy and Simon was listed as a licensed driver resident in Martin's household. For purposes of the summary judgment motion hearing, the parties stipulated to certain facts. Among these were Simon's medical, funeral and burial expenses, which totaled $12,417.76 and were paid by Martin.[2]

¶ 6. In June 1999, Prudential tendered its $100,000 policy limits to "Martin A. Bruflat and/or Mary A. Bruflat"; it was then dismissed from the action. The proceeds were deposited into an account and await the final disposition of this case.

¶ 7. Following the summary judgment motion hearing, the circuit court issued its judgment on July 22, 1999, dividing the insurance proceeds equally between Martin and Mary, notwithstanding Simon's funeral expenses. Martin appeals.

## DISCUSSION

¶ 8. We review a summary judgment decision de novo, applying the same standards as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2); *Kersten*, 136 Wis. 2d at 315. Summary judgment is particularly

---

[2] Martin received $2058 as memorials for Simon; therefore, his net payment for Simon's expenses was $10,359.76. Martin and Mary agreed that each would be responsible for half of this sum.

appropriate here where there is a stipulation as to the material facts.

¶ 9. Summary judgment is properly used to address issues of insurance coverage. *See State Farm Mut. Ins. Co. v. Kelly*, 132 Wis. 2d 187, 189, 389 N.W.2d 838 (Ct. App. 1986). An appellate court interprets an insurance policy's terms as a question of contract law without giving deference to the circuit court's decision. *See Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 547, 464 N.W.2d 830 (1991).

¶ 10. Martin challenges the circuit court's determination that Prudential's policy proceeds should be equally divided between Simon's parents even though Martin was the named insured and Mary was not covered under the policy. We begin by reviewing the insurance policy.

¶ 11. In interpreting an insurance contract, we ask what a reasonable person in the position of the insured would have understood the words of the contract to mean. *See Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 90–91, 540 N.W.2d 26 (Ct. App. 1995). In doing so, we use the same rules of construction that apply to other contracts. *See Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 346, 504 N.W.2d 370 (Ct. App. 1993). The policy language is dispositive to the extent that it is plain and unambiguous. *See id.* If the terms of an insurance contract are clear on their face, the policy must not be rewritten by construction. *See id.*

¶ 12. Prudential's UM protection provides:

If **you** have this coverage . . ., **we** will pay up to **our** limit of liability for **bodily injury** that is covered

under this part when an insured, whether or not occupying a **car**, is struck by an uninsured **motor vehicle**. **Our** payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the uninsured **motor vehicle** because:

## THE OWNER OR DRIVER IS NOT INSURED

¶ 13. The policy defines who is an insured: "**You** and a **resident relative** are insured while using **your car** . . . ." "You" and "your" refer to "the person shown as the named insured on the Declarations of this policy, and **your** spouse if he or she lives in **your** household." A "resident relative" is "someone who lives in **your** household and is related to **you** by blood, marriage, adoption or is a ward or foster child." "Bodily injury" means "**bodily injury**, sickness, disease or death suffered by a person."

¶ 14. Martin argues that because the policy promises to pay the amount that an insured is legally entitled to collect, he, as the insured, is entitled to recover all of the proceeds and Mary, who was not an insured, is entitled to recover nothing. We disagree.

¶ 15. The first sentence of Prudential's UM coverage states that when an insured is struck by an uninsured motor vehicle, Prudential will pay up to its limit of liability for bodily injury. Bodily injury includes injury resulting in death. Here, "an insured" includes Martin, as the named insured, and Simon, as a "resident relative." Simon was struck and killed by an uninsured motor vehicle; therefore, Prudential has a duty to pay.

¶ 16. Next, the policy provides that payment is based on the "amount that an insured is legally entitled to recover for **bodily injury** but could not collect"

528

because the other driver was uninsured. This statement tells us the amount that an insured can recover; however, contrary to Martin's argument, it does not specify to whom payment is entitled.

¶ 17. Mary focuses on another section of the policy entitled "MEDICAL PAYMENTS—IF YOU ARE INJURED IN A CAR ACCIDENT." In a paragraph entitled "TO WHOM PAYMENTS ARE MADE," the policy states that Prudential "can make these payments either to the injured person, his or her legal representatives or heirs, or to those providing the services." Applying this language to the present case, the "injured person," Simon, is not in a position to receive payment because he is deceased. Simon's heirs, however, are. WISCONSIN STAT. § 852.01(1)(c) designates Simon's heirs as his parents. Therefore, the policy permits payment to both Martin and Mary. We reject Martin's position that payment must be made to the named insured when another insured under the policy is fatally injured.

¶ 18. In addition to the policy, we read Wisconsin's wrongful death statute as requiring that the insurance proceeds be given to both Martin and Mary. WISCONSIN STAT. § 895.04(1) states that "[a]n action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs." Subsection (2) instructs that "the amount recovered shall belong and be paid . . . if no spouse survives, to the deceased's lineal heirs as determined by s. 852.01." Because Simon was neither married nor had any children, his lineal heirs are his parents. *See* WIS. STAT. § 852.01(1)(c). We therefore conclude that the wrongful

death statute requires payment of the insurance proceeds to both Martin and Mary.[3]

¶ 19. While ignoring the wrongful death statute, Martin seeks support for his position by looking to the stated purposes of UM protection. WISCONSIN STAT. § 632.32(4)(a) requires UM benefits in motor vehicle insurance policies "[f]or the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom." In *Clark v. American Family Mutual Insurance Co.*, 218 Wis. 2d 169, 577 N.W.2d 790 (1998), the supreme court noted that the policy behind uninsured motorist coverage is "to compensate an insured who is the victim of an uninsured motorist's

---

[3] In support of his argument, Martin quotes from a Louisiana case, *Lafleur v. Fidelity & Casualty Co.*, 385 So. 2d 1241, 1245 (La. Ct. App. 1980), which states:

> [I]f the person whose death is wrongfully caused is an insured, any person who is also an insured and entitled to recover for wrongful death under LSA-C.C. Art. 2315, may invoke the uninsured provisions of a policy. Here the mother of plaintiffs-appellants, Mrs. Lorena Deshotel, was not an insured. She was a third person having no connection with the policies of insurance, the insured vehicles, or the households of the plaintiffs-appellants.

*Lafleur* is inapposite, however, because the issue there was one of coverage, not who should receive tendered insurance proceeds. The deceased mother in *Lafleur* was killed as a passenger of an automobile that was uninsured. She did not have automobile insurance of her own and she did not reside in any of the plaintiffs' households. The court denied the adult children's claims for UM coverage under their own insurance policies because their mother had no connection to the policies. Unlike *Lafleur*, the present case does not involve a coverage dispute and *Lafleur* does not address who may receive insurance proceeds once tendered.

negligence to the same extent as if the uninsured motorist were insured." *Id.* at 178 (quoting *Nicholson v. Home Ins. Co.*, 137 Wis. 2d 581, 591–92, 405 N.W.2d 327 (1987)).

¶ 20. Martin seizes upon the language in *Clark*, arguing that because UM coverage promises to pay the *insured* those amounts he or she is entitled to recover for bodily injury, he is entitled to the insurance proceeds as the insured—and to the exclusion of noninsureds. We are not persuaded, however, that the purpose of UM coverage is only to compensate insureds. *Clark* speaks of compensating an individual who is "the victim of an uninsured motorist's negligence." Likewise, Prudential's UM coverage seeks to reimburse the victim. In the present case, Simon is the victim, not Martin. Because Simon did not survive, compensation must go to his survivors pursuant to Prudential's policy and WIS. STAT. § 895.04. We find no statement of public policy barring distribution of UM insurance benefits to noninsureds. Certainly, had Simon been the only insured under Prudential's policy, his heirs, while not insureds themselves, would have been in a position to collect UM compensation. The same result applies here.

¶ 21. We affirm the circuit court's decision awarding Martin $55,179.88 and Mary $44,820.12.[4]

*By the Court.*—Judgment affirmed.

---

[4] Upon the circuit court's determination of coverage, both parties stipulated that Mary was to receive an award of $50,000 minus a proportionate share of Simon's medical and funeral expenses and that Martin was to be given the remainder. *See Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 573–74, 514 N.W.2d 399 (1994).