# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1320 |

| | |
|---|---|
| COMPLETE TITLE: | Elliot Brey and Estate of Ryan B. Johnson, <br>      Plaintiffs-Appellants, <br>     v. <br> State Farm Mutual Automobile Insurance Company, <br>      Defendant-Respondent-Petitioner, <br> Channing H. Mathews, Craig A. Mathews and <br> Sentry Insurance, A Mutual Company, <br>      Defendants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 393 Wis. 2d 574,947 N.W.2d 205
PDC No:2020 WI App 45 - Published

| | |
|---|---|
| OPINION FILED: | February 15, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 15, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Monroe |
|   JUDGE: | Richard A. Radcliffe |

JUSTICES:

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

  For the defendant-respondent-petitioner, there were briefs filed by *Andrew B. Hebl*, *Kathryn A. Pfefferle*, and *Boardman & Clark LLP*, Madison. There was an oral argument by *Andrew B. Hebl*.

  For the plaintiff-appellants, there was a brief filed by *James G. Curtis*, *Garett T. Pankratyz*, and *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse. There was an oral argument by *James G. Curtis*.

An amicus curiae brief was filed on behalf of The Wisconsin Insurance Alliance by *James A. Friedman*, *Daniel C.W. Narvey*, and *Godfrey & Kahn, S.C.*, Madison.

An amicus curiae brief was filed on behalf of Wisconsin Defense Counsel by *Vincent J. Scipior* and *Coyne, Schultz, Becker & Bauer, S.C.*, Madison; with whom on the brief was *Erik L. Fuehrer* and *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1320
(L.C. No. 2015CV223)

STATE OF WISCONSIN          :         IN SUPREME COURT

**Elliot Brey and Estate of Ryan B. Johnson,**

      **Plaintiffs-Appellants,**

  **v.**

**State Farm Mutual Automobile Insurance Company,**

      **Defendant-Respondent-Petitioner,**

**Channing H. Mathews, Craig A. Mathews and Sentry Insurance, A Mutual Company,**

      **Defendants.**

**FILED**

**FEB 15, 2022**

Sheila T. Reiff
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. State Farm Mutual Automobile Insurance Company (State Farm) asks this court to reverse the court of appeals decision[1] reversing the circuit court's grant of summary judgment in favor of State Farm. The

___

[1] Brey v. State Farm Mut. Auto. Ins. Co., 2020 WI App 45, 393 Wis. 2d 574, 947 N.W.2d 205.

circuit court determined the State Farm automobile liability insurance policy issued to Elliot Brey's mother and her husband (the Policy) did not provide underinsured motorist (UIM) coverage to Elliot Brey (Brey) for the death of his father, Ryan B. Johnson (Johnson), in an automobile accident.[2] The Policy limits UIM coverage to compensatory damages for "bodily injury . . . sustained by an insured[.]" Brey was an insured under the Policy, but Johnson was not. The circuit court ruled Brey could not recover under the policy because Brey did not sustain bodily injury. The court of appeals reversed and remanded with directions to grant summary judgment in favor of Brey, holding Wis. Stat. § 632.32(1) and (2)(d) (2017-18)[3] bar an insurer from limiting UIM coverage to only those insureds who sustain bodily injury or death.

¶2    State Farm contends that Wis. Stat. § 632.32(2)(d) does not require insurers to extend UIM coverage to an insured for bodily injury or death suffered by a person who was not insured under the Policy. State Farm argues this conclusion is supported by the plain meaning of the statute, the court of appeals' decision in Ledman v. State Farm Mutual Automobile Insurance Co., 230 Wis. 2d 56, 601 N.W.2d 312 (Ct. App. 1999), longstanding automobile insurance law, and other jurisdictions' interpretations of similar statutes. We agree and hold Wis. Stat. § 632.32(2)(d)

_____

[2] The Honorable Richard A. Radcliffe, Monroe County Circuit Court, presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

does not bar an insurer from requiring that an insured sustain bodily injury or death in order to trigger UIM coverage under an automobile liability insurance policy. Accordingly, we reverse the decision of the court of appeals.

## I. BACKGROUND

¶3 Johnson died from injuries sustained in an automobile accident in 2015, leaving behind his minor son, Elliot Brey. State Farm insured Brey as a resident relative under the Policy issued to Hannah and Jake Brey, Brey's mother and her husband, covering a 2007 Honda CRV. That vehicle was not involved in the accident. Johnson, who was a passenger in a vehicle driven by Channing H. Mathews, was not insured under any State Farm policy.

¶4 Brey intervened in an action brought by Johnson's parents against the driver, the owner of the vehicle, and their insurance companies, and added State Farm as a defendant, seeking to recover damages under the Policy for the death of his father.[4] In pertinent part, the UIM coverage provisions of the Policy provided that an insured must have sustained bodily injury caused by an accident involving an underinsured motor vehicle in order to collect compensatory damages.[5]

---

[4] As relevant here, Brey sought damages for negligence, loss of society and companionship, and wrongful death under the Policy. State Farm filed a motion to bifurcate the insurance coverage issues from issues of liability and damages, which the circuit court granted.

[5] The UIM coverage clauses provide, in relevant part:

We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or

3

¶5    Both Brey and State Farm moved for summary judgment. State Farm sought a declaration that the Policy under which Brey was insured did not provide UIM coverage for the death of Johnson, because he was not an "insured" under the Policy.  In response, Brey acknowledged the terms of the Policy preclude coverage, but argued the Policy's requirement that an insured sustain injury was contrary to Wis. Stat. § 632.32(2)(d) and therefore void and unenforceable.  Section 632.32 is sometimes called the "Omnibus Statute" because it sets the minimum requirements all motor vehicle insurance policies in Wisconsin must satisfy.

¶6    The circuit court granted summary judgment in favor of State Farm based on the language of the Policy, the statutory history of Wis. Stat. § 632.32, and the court of appeals' decision in Ledman.  In that case, the court of appeals held the Ledmans, insured under a State Farm automobile insurance policy, could not recover for the wrongful death of their adult daughter in an automobile accident under the policy's uninsured motorist vehicle provisions.  See Ledman, 230 Wis. 2d at 69.  The Ledman court emphasized the policy as a whole showed an "expected nexus of bodily injury to the insured as part of the overall general scheme

---

driver of an underinsured motor vehicle.  The bodily injury must be:

1. Sustained by an insured; and

2. Caused by an accident that involves the ownership, maintenance, or use of an underinsured motor vehicle as a motor vehicle.

4

and intent" of the policy, and an alternative reading would produce "unreasonable results."  Id. at 67-68.

¶7   The court of appeals reversed and remanded, determining Ledman did not govern and holding Wis. Stat. § 632.32(1) and (2)(d) bar an insurer from limiting UIM coverage to only those insureds who suffer bodily injury or death.  Brey v. State Farm Mut. Auto. Ins. Co., 2020 WI App 45, ¶¶24-25, 393 Wis. 2d 574, 947 N.W.2d 205. We granted State Farm's petition for review.

## II.   STANDARD OF REVIEW

¶8   We review a grant of summary judgment in this case. "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law."  Kemper Indep. Ins. Co. v. Islami, 2021 WI 53, ¶13, 397 Wis. 2d 394, 959 N.W.2d 912 (quoting Talley v. Mustafa, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55).  "We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals."  Id. (quoting Talley, 381 Wis. 2d 393, ¶12).

¶9   This case also requires us to interpret and apply the Omnibus Statute.  "The interpretation and application of statutes present questions of law that we review independently, benefitting from the analyses of the circuit court and court of appeals."  Eau Claire Cnty. Dep't of Human Servs. v. S.E., 2021 WI 56, ¶13, 397 Wis. 2d 462, 960 N.W.2d 391 (citing State v. Stephenson, 2020 WI 92, ¶18, 394 Wis. 2d 703, 951 N.W.2d 819).

III. DISCUSSION

¶10 The parties do not dispute that the Policy bars coverage for Brey's wrongful death claim because the UIM coverage provisions require an insured to sustain bodily injury, and Johnson was not an insured under the Policy. Nonetheless, Brey contends that Wis. Stat. § 632.32(2)(d) precludes an insurer from limiting UIM coverage to only injured insureds. Section 632.32(2)(d)——located within the definitions section——provides: "'Underinsured motorist coverage' means coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured motor vehicles." This case turns on whether the UIM coverage clauses comport with this definition.

A. Plain Meaning of Wis. Stat. § 632.32(2)(d)

¶11 Our interpretation of Wis. Stat. § 632.32(2)(d) "'begins with the language of the statute.' If the meaning of the language is plain, our inquiry ordinarily ends." Milwaukee Dist. Council 48 v. Milwaukee County, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 (quoting State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110)(citation omitted). Importantly, "ascertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof." State v. Ziegler, 2012 WI 73, ¶43, 342 Wis. 2d 256, 816 N.W.2d 238 (citing Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶12, 293 Wis. 2d 123, 717 N.W.2d 258). A statute's context and structure are critical to a proper plain-

meaning analysis. Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶11, (citing Kalal, 271 Wis. 2d 633, ¶46).

> If statutory language is plain, courts must enforce it according to its terms, but oftentimes the meaning or ambiguity of certain words or phrases may only become evident when placed in context, so when deciding whether language is plain, courts must read the words in their context and with a view to their place in the overall statutory scheme.

2A Sutherland Statutory Construction § 46:1 n.1 (7th ed. updated Nov. 2021) (citing King v. Burwell, 576 U.S. 473 (2015)). Properly applied, the plain-meaning approach is not "literalistic"; rather, the ascertainment of meaning involves a "process of analysis" focused on deriving the fair meaning of the text itself. See Kalal, 271 Wis. 2d 633, ¶¶46, 52 (quoting Bruno v. Milwaukee County, 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 355 (2012) ("Literalness may strangle meaning." (quoting Utah Junk Co. v. Porter, 328 U.S. 39, 44 (1946))).

¶12 The court of appeals' conclusion that Wis. Stat. § 632.32(2)(d) contains an "unambiguous statement" prohibiting State Farm from conditioning coverage on an insured sustaining bodily injury reflects a literalistic approach to statutory interpretation. See Brey, 393 Wis. 2d 574, ¶22. That court reasoned: (1) Brey is an "insured"; (2) who is "legally entitled to recover damages"; (3) because he has a wrongful death claim against the "owner or operator of an underinsured motor vehicle." Id. The court of appeals erred by strictly construing the

7

statutory definition in isolation rather than interpreting it in the context of the Omnibus Statute's pertinent text as a whole.

¶13 We reject this hyper-literal approach. Statutory interpretation centers on the "ascertainment of meaning," not the recitation of words in isolation. See Kalal, 271 Wis. 2d 633, ¶47. By declining to address statutory context, the court of appeals erroneously confined its statutory analysis to the definition in Wis. Stat. § 632.32(2)(d). It should have instead "interpreted [the definition] in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46 (citations omitted). "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Scalia & Garner, supra at 167.

¶14 The statutory context and structure of Wis. Stat. § 632.32(2)(d) indicate UIM coverage exists only when an insured suffers bodily injury or death. "The reason to doubt a literal meaning of [a statute] is that it clashes with related statutes." Teschendorf, 293 Wis. 2d 123, ¶24. A literal interpretation of § 632.32(2)(d) clashes with parts of the same statute. Section 632.32(5) lists "permissible provisions" contemplating a variety of scenarios under which insurers may limit UIM coverage. Read in the context of these paragraphs, § 632.32(2)(d) does not

require insurers to extend UIM coverage when no insured has suffered bodily injury or death.[6]

¶15 Multiple paragraphs of Wis. Stat. § 632.32(5) are incompatible with Brey's construction of § 632.32(2)(d). First, § 632.32(5)(g) states:

> A policy may provide that the maximum amount of uninsured motorist coverage, underinsured motorist coverage, or medical payments coverage available for bodily injury or death suffered by a person who was not using a motor vehicle at the time of an accident is the highest single limit of uninsured motorist coverage, underinsured motorist coverage, or medical payments coverage, whichever is applicable, for any motor vehicle with respect to which the person is insured.

§ 632.32(5)(g) (emphasis added). This paragraph allows an "anti-stacking" policy provision, permitting insurers to prohibit insureds from stacking policies to increase the aggregate coverage limit. It ends by referring to "the person . . . insured." The definite article "the" signals that the noun following it, in this case, "person," refers back to a specific instance of that noun already mentioned. See, e.g., Flandreau Santee Sioux Tribe v.

---

[6] Brey argues these subparts are irrelevant because they address coverage limits, rather than coverage itself. The court of appeals agreed and rejected State Farm's contextual argument on the grounds that the cited "statutory subparts do not identify or define the statutory requirements for a UIM claim" and that court deemed the argument "conclusory and undeveloped." Brey, 393 Wis. 2d 574, ¶25 n.6 (citing State v. Pettit, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992)). The court of appeals adopted an atextually narrow reasoning by disregarding subparts forming part of the same insurance coverage system and statutory scheme, which accordingly provide meaningful context. In this statute, the manner in which coverage applies informs to whom it applies: insureds who have sustained a bodily injury.

9

United States, 197 F.3d 949, 952 (8th Cir. 1999). "Person" was introduced at an earlier point——"a person" who suffered "injury or death." Accordingly, this paragraph presupposes "the person . . . insured" is "a person" who suffered "bodily injury or death." As a whole, this paragraph permits insurers to limit "the maximum amount of . . . [UIM] coverage . . . for bodily injury or death suffered by a person who was not using a motor vehicle at the time of an accident" to "the highest single limit of . . . [UIM] coverage . . . for any motor vehicle with respect to which the person is insured." § 632.32(5)(g). In this case, the person insured——Brey——did not suffer bodily injury or death. Johnson died, but he was not insured under the Policy.

¶16 Second, Wis. Stat. § 632.32(5)(f)——also allowing "anti-stacking" provisions——similarly contemplates a nexus between an insured and the bodily injury. It states:

> A policy may provide that, regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of <u>insurance coverage available for bodily injury or death suffered by a person in any one accident</u>.

§ 632.32(5)(f) (emphasis added). Using the phrase, "insurance coverage available for bodily injury or death suffered by a person in any one accident," § 632.32(5)(f) ties "coverage" to "bodily injury or death" suffered by a person in an accident. Similar to paragraph (5)(g), this paragraph presumes coverage is for a person injured in an accident. Interpreting § 632.32(2)(d) to require

10

UIM coverage even if no insured person was injured conflicts with § 632.32(5)(f) and (g), which permit limits on coverage for insured persons who suffer bodily injury. Interpreting § 632.32(2)(d) to apply anti-stacking provisions only to injured insureds while allowing uninjured insureds to circumvent them would be nonsensical.[7]

¶17 Third, Wis. Stat. § 632.32(5)(j)——allowing "drive-other-car" exclusions——further supports State Farm's interpretation of § 632.32(2)(d), under which insurers may require insureds to have suffered bodily injury or death to trigger UIM coverage. This exclusion "keep[s] an insured from using insurance coverage of one car to provide coverage on another vehicle the insured owns but has not insured." Belding v. Demoulin, 2014 WI 8, ¶8, 352 Wis. 2d 359, 843 N.W.2d 373. The drive-other-car exclusion targets the "'free rider' problem. 'Wisconsin courts have long recognized that the purpose of the drive other cars exclusion is to provide coverage to the insured when he or she has infrequent or casual use of a vehicle other than the one described in the policy, but to exclude coverage of a vehicle that the insured owns or frequently uses for which no premium has been paid.'" Id., ¶36 (quoting Westphal v. Farmers Ins. Exch., 2003 WI App 170, ¶11, 266

---

[7] Similarly, Wis. Stat. § 632.32(5)(i) allows "reducing clauses," under which insurers may reduce the limits for "[UIM] coverage for bodily injury or death resulting from any one accident" by amounts paid by third parties, or under worker's compensation or disability benefits laws. § 632.32(5)(i). This reducing clause statute, like the anti-stacking provisions, specifies "coverage" is for "bodily injury or death."

Wis. 2d 569, 669 N.W.2d 166). To interpret § 632.32(2)(d) to require an insurer to extend UIM coverage for an accident involving neither an insured nor a covered vehicle would render it at striking odds with § 632.32(5)(j), which expressly permits an insurer to exclude from UIM coverage an insured who is injured while driving a vehicle not covered under the policy.

¶18 Fourth, Wis. Stat. § 632.32(5)(e) permits an insurer to "provide for exclusions not prohibited by sub. (6) or other applicable law. Such exclusions are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b)."[8] In Vieau v. American Family Mutual Insurance Co. & Acuity, 2006 WI 31, ¶40, 289 Wis. 2d 552, 712 N.W.2d 661, we upheld a definitional exclusion denying an injured insured UIM coverage under his mother's policy, under which he was otherwise covered as a relative, because he owned his own vehicle. We concluded, "Were we to decide this case otherwise, a family of five with five vehicles could pay one premium on one policy with UIM coverage and potentially collect UIM proceeds five times. We cannot support such a result." Id. Given that an otherwise insured accident victim can be excluded from UIM coverage under his mother's policy because of the

_____

[8] Wisconsin Stat. § 632.32(6)(b) identifies certain categories of persons whom "[n]o policy may exclude from the coverage afforded or benefits provided[,]" including, for example, "[p]ersons related by blood, marriage or adoption to the insured" or "[a]ny person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including death resulting therefrom, to that person." § 632.32(6)(b)1.-2.

12

insurer's "own-other-car" exclusion, it would be incongruous for the same statutory scheme to mandate that insurers provide UIM coverage for an accident victim who is not insured under any policy. Id., ¶¶25-26.

¶19 We explained in Vieau that "the main purpose of the [drive-other-car] exclusion is to prevent resident relatives who own their own vehicles from piggybacking on the . . . UIM coverage of a single insured." Id., ¶29. Banning insurers from mitigating "piggybacking" problems related to insureds receiving UIM coverage for accidents involving non-insureds——when those non-insureds could have contracted for UIM coverage——clashes with the coverage limitation permitted under Wis. Stat. § 632.32(5)(e).

### B. Statutory and Legislative History of Wis. Stat. § 632.32(2)(d)

¶20 The history of Wis. Stat. § 632.32(2)(d) fortifies our plain-meaning analysis. Statutory history, which involves comparing the statute with its prior versions, "may also be used as part of 'plain meaning analysis.'" James v. Heinrich, 2021 WI 58, ¶26, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting Richards v. Badger Mut. Insurance Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581). Unlike legislative history, prior versions of statutory provisions were enacted law; as such, statutory history constitutes an intrinsic source that "is part of the context in which we interpret the words used in a statute." Richards, 309 Wis. 2d 541, ¶22; see also United States v. Franklin, 2019 WI 64, ¶13, 387 Wis. 2d 259, 928 N.W.2d 545 (quoting Richards, 309 Wis. 2d 541, ¶22).

13

¶21 We have long recognized a distinction between statutory and legislative history. Kalal, 271 Wis. 2d 633, ¶52 n.9 ("Although it is proper to look at a statute's background in the form of actually enacted and repealed provisions, the legislative history, which was never enacted, should rarely be permitted to supplant the statutory words as they are ordinarily understood." (quoting Cass R. Sunstein, Interpreting Statutes in the Regulatory State, 103 Harv. L. Rev. 405, 430 (1989))). Legislative history, as the byproduct of legislation, is extrinsic evidence of a law's meaning and becomes relevant only to confirm plain meaning or when a statute remains ambiguous even after "the primary intrinsic analysis has been exhausted[.]" State v. Hayes, 2004 WI 80, ¶109, 273 Wis. 2d 1, 681 N.W.2d 203 (Sykes, J., concurring); see also Town of Rib Mountain v. Marathon County, 2019 WI 50, ¶9, 386 Wis. 2d 632, 926 N.W.2d 731 (quoting Kalal, 271 Wis. 2d 633, ¶46). Although we sometimes discuss statutory and legislative history jointly for readability, each source serves a distinct role in statutory interpretation. See James, 397 Wis. 2d 517, ¶¶26–31.

¶22 In 2009, the legislature overhauled the UIM statutory landscape. Known as the "Truth in Automobile Insurance Law" (TAIL) and enacted as part of Governor Jim Doyle's budget, 2009 Wisconsin Act 28 revised the automobile insurance statutes in favor of enhanced coverage for consumers. See 2009 Wis. Act 28; Robert L. Jaskulski, Politics & Wisconsin Automobile Insurance Law, Wis. Law., Nov. 2010, at 14. As relevant, the law made UIM coverage mandatory instead of optional, increased the amount injured persons could recover under uninsured and underinsured motorist

14

coverage, and prohibited reducing clauses and anti-stacking provisions.  See Wis. Stat. §§ 632.32(4), (6)d.-g. & 631.43(3) (2009-10).  Significantly for this case, 2009 Wisconsin Act 28 also defined "underinsured motor vehicle" as a motor vehicle "involved in an accident with a person who has underinsured motorist coverage."[9]  See Wis. Stat. § 632.32(2)(e)1. (2009-10). Underinsured motorist coverage was understood to protect "a driver and any passengers who are injured if they are hit by another driver who is found to be liable for the accident but has . . . coverage that is less than the amount needed to compensate a covered person for his or her damages."  Legislative

---

[9] The full definition provided:

> (e) "Underinsured motor vehicle" means a motor vehicle to which all of the following apply:
>
> 1. The motor vehicle is involved in an accident with a person who has underinsured motorist coverage.
>
> 2. At the time of the accident, a bodily injury liability insurance policy applies to the motor vehicle or the owner or operator of the motor vehicle has furnished proof of financial responsibility for the future under subch. III of ch. 344 and it is in effect or is a self-insurer under another applicable motor vehicle law.
>
> 3. The limits under the bodily injury liability insurance policy or with respect to the proof of financial responsibility or self-insurance are less than the amount needed to fully compensate the insured for his or her damages.

Wis. Stat. § 632.32(2)(e) (2009-10).

15

Reference Bureau, Budget Brief: Mandatory Motor Vehicle Insurance [Budget Brief 10-1] (2010).

¶23 This expanded UIM coverage system was short-lived; in 2011, the legislature repealed or amended many of the 2009 changes. Most pertinent, the legislature repealed the definition of "underinsured motor vehicle" in Wis. Stat. § 632.32(2)(e), but retained the definition of "uninsured motor vehicle" in § 632.32(2)(g) as well as the definition of "underinsured motorist coverage" in § 632.32(2)(d). See 2011 Wis. Act 14; Wis. Stat. § 632.32(2)(d), (g) (2011-12). Brey contends the 2011 repeal of the definition of "underinsured motor vehicle" left § 632.32(2)(d) to require insurers to provide UIM coverage to their insureds regardless of whether an insured actually sustained bodily injury in an accident. We disagree.

¶24 In repealing Wis. Stat. § 632.32(2)(e)——the definition of "underinsured motor vehicle"——the legislature did not broaden UIM coverage for tort victims, but rather increased coverage flexibility for insurers. As noted previously, the statutes did not define "underinsured motor vehicle" prior to 2009. Consequently, insurers had used one of two definitions: in some policies, "underinsured motor vehicle" was "defined as one insured by a policy with liability limits less than the insured's UIM coverage limits (limits of coverage)." Taylor v. Greatway Ins. Co., 2001 WI 93, ¶33, 245 Wis. 2d 134, 628 N.W.2d 916 (Ann Walsh Bradley, J., dissenting). In others, it was defined "by comparison of the at-fault driver's liability limits with the damages sustained by the insured (limits of damages)." Id. The 2009

16

addition of § 632.32(e) restricted insurers to the "limits of damages" definition. See 2009 Wis. Act 28, § 3153 ("'Underinsured motor vehicle' means a motor vehicle to which all of the following apply: . . . The limits under the bodily injury liability insurance policy are less than the amount needed to fully compensate the insured for his or her damages.").

¶25 In 2011, the legislature repealed Wis. Stat. § 632.32(2)(e) in its entirety. See 2011 Wis. Act 14, § 15c. A Legislative Council memo recognized that by "return[ing] the definition of underinsured motorist coverage to the status of that law prior to being revised by 2009 Wisconsin Act 28," the repeal "leaves that term undefined in the statutes, to be defined by each individual insurance policy, as it was prior to 2009 Wisconsin Act 28." Margit Kelley, Wis. Legis. Council Amendment Memo, 2011 Assembly Bill 4: Assembly Amendments 1 and 7 (Jan. 28, 2011).[10] The repeal thereby expanded insurers' options for contractually defining UIM coverage.

¶26 Adopting Brey's (and the court of appeals') interpretation of the repeal of Wis. Stat. § 632.32(2)(e) would preclude insurers not only from requiring that the vehicle be "involved in an accident with a person who has underinsured

---

[10] Both Assembly Amendments 1 and 7 were adopted and included in the final version of 2011 Wis. Act 14. See Margit Kelley, Wis. Legis. Council Act Memo, 2011 Wisconsin Act 14: Motor Vehicle Liability Insurance (Apr. 20, 2011). In both memos, the author incorrectly states "the definition of underinsured motorist coverage" was repealed, instead of the definition of underinsured motorist vehicle. This does not affect our analysis.

17

motorist coverage" under § 632.32(2)(e)1., but also from utilizing the "limits of damages" definition under § 632.32(2)(e)3. Because the repeal of the definition of "underinsured motor vehicle" expanded rather than constrained insurers' definitional choices——allowing insurers to utilize either the "limits of coverage" or "limits of damages" definition——Brey's interpretation fails in light of the statute's history.

¶27 The 2011 legislative changes not only expanded insurers' contractual freedom by repealing the definitional requirements of Wis. Stat. § 632.32(2)(e), they also narrowed the required scope of UIM coverage generally. For example, 2011 Wisconsin Act 14 made underinsured motorist coverage optional rather than mandatory; reduced the minimum limits from $100,000 per person and $300,000 per accident to $50,000 per person and $100,000 per accident; reintroduced anti-stacking and reducing clauses as permissible policy provisions; and removed the requirement that each application for an umbrella or excess liability policy include a written offer of UM and UIM coverages. See Legislative Reference Bureau, Summary of the 2011-12 Wisconsin Legislative Session, at 26. Additionally, the 2011 enactments required an insurer to provide notice of UIM coverage availability only once, and declared an insured's acceptance or rejection of UIM coverage need not be in writing. Wis. Stat. § 632.32(4m) (2011-12). Further, the law considered the absence of a premium payment for UIM to be "conclusive proof that the person has rejected such coverage." § 632.32(4m)(b). Collectively, these 2011 enactments evince a "textually or contextually manifest" purpose to permit greater

18

limitations on UIM coverage and expand insurer flexibility——goals entirely inconsistent with a mandate that insurers provide UIM coverage to insureds who are not involved in any accident at all. See Kalal, 271 Wis. 2d 633, ¶49 ("[A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose.").[11]

### C. Wrongful Death Claims Under UIM/UM Policies

¶28 "Wrongful death actions are derivative tort actions." Christ v. Exxon Mobil Corp., 2015 WI 58, ¶22, 362 Wis. 2d 668, 866 N.W.2d 602 (citing Ruppa v. Am. States Ins. Co., 91 Wis. 2d 628, 646, 284 N.W.2d 318 (1979)). In Christ, we explained:

> [E]ven though the wrongful death statute creates a 'new action' and 'allows a person to recover his or her own damages sustained because of the wrongful death of another,' the person's right of action depends not only upon the death of another person but also upon that other person's entitlement to maintain an action and recover if his death had not occurred.

Id. (citations omitted). In order for a wrongful death claim to exist, "the decedent must have had a valid claim for damages against the defendant at the time of his death." Id., ¶23. At the time of his death, Johnson could not have recovered damages

---

[11] Neither the court of appeals' decision in Ledman v. State Farm Mutual Automobile Insurance Co., 230 Wis. 2d 56, 601 N.W.2d 312 (Ct. App. 1999), which did not address the UIM statutory provisions, nor the litany of other states' interpretations of similar statutes, which State Farm cites in support of its interpretation, are necessary to resolve this case. Rather, under a plain-meaning analysis, confirmed by legislative history, Wis. Stat. § 632.32(2)(d) unambiguously does not bar an automobile liability policy from requiring that an insured sustain bodily injury in order to trigger UIM coverage.

under the UIM coverage provisions of the Policy because he was not an insured.  Consequently, Brey cannot maintain a derivative action against State Farm.  See id. ("If the decedent would have been barred from making a claim, the decedent's statutory beneficiary also would be barred.").

¶29  Several Wisconsin cases confirm the derivative nature of wrongful death actions in the context of UIM/UM coverage specifically, concluding an accident victim must possess an independent claim for UIM coverage in order for a wrongful death claim to proceed.  For example, in State Farm Mutual Automobile Insurance Co. v. Langridge, 2004 WI 113, ¶51, 275 Wis. 2d 35, 683 N.W.2d 75, "an insured [Mrs. Langridge] who suffered no bodily injury [sought] to recover for her spouse's wrongful death" under their policy's UIM coverage "after the tortfeasor's 'limits of liability for bodily injury' had been fully paid."  The tortfeasor's per person liability limit exceeded the per person UIM limit in the Langridges' policy, which accordingly afforded no UIM coverage for the accident causing Mr. Langridge's death.  We held that under the Langridges' policy, "Mrs. Langridge had a derivative claim for her husband's bodily injury.  She had a right to pursue that derivative claim whether or not she suffered bodily injury, but only until the tortfeasor's per person limit of liability was exhausted.  She did not have her own independent claim under the policy."  Id., ¶55.

¶30  In holding that Mrs. Langridge's claim was limited to the tortfeasor's per person liability limit, this court concluded that "Mrs. Langridge's reading of the policy," under which the

20

tortfeasor was underinsured as to her since the policy limits were paid to the estate and not Mrs. Langridge,

> [E]ssentially transforms UIM into a form of life insurance for a spouse killed in an automobile accident. This is not consistent with a reasonable insured's understanding of the UIM policy. Another way of saying this is that a tortfeasor's motor vehicle would likely be transformed into an 'underinsured motor vehicle' whenever another insured had a wrongful death claim. This would untether the definition of 'underinsured motor vehicle' from the concept it was intended to define.

Id., ¶¶51-52.

¶31 In Bruflat v. Prudential Property & Casualty Insurance Co., 2000 WI App 69, ¶19, 233 Wis. 2d 523, 608 N.W.2d 371, abrogated on other grounds by Day v. Allstate Indemnity Co., 2011 WI 24, 332 Wis. 2d 571, 798 N.W.2d 199, the court of appeals described the purpose of UM policies as "[compensation for] an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." In that wrongful death dispute, the court identified the deceased son (insured as a resident relative under his father's policy) as the victim——not the insured father. Id., ¶20. Other decisions by this court similarly link the insured to the bodily injury sustained in the accident for purposes of UIM coverage. See, e.g., Bethke v. Auto-Owners Ins. Co., 2013 WI 16, ¶19, 345 Wis. 2d 533, 825 N.W.2d 482 ("UIM coverage provides additional coverage to insured automobile accident victims when a liable party has inadequate means of payment."); Pitts v. Revocable Trust of Knueppel, 2005 WI 95, ¶28, 282 Wis. 2d 550, 698 N.W.2d 761 ("Underinsured motorist coverage

21

is intended to <u>protect motorists</u> against inadequately insured tortfeasors." (emphasis added)).

¶32 The court of appeals has also linked UM and UIM coverage to the injured insured. <u>See, e.g.</u>, <u>Mullen v. Walczak</u>, 2002 WI App 254, 257 Wis. 2d 928, 653 N.W.2d 529 (holding that although an injured accident victim was entitled to recover damages under his policy's UM coverage for emotional distress from witnessing his wife's death, these damages——since they arose from his wife's bodily injury——were subject to her "each person" limit, which had already been exhausted by a wrongful death claim brought on behalf of her estate). Collectively, these cases illustrate that UIM/UM insurance protects the insured accident victim, conditioning coverage on a nexus between the insured and the bodily injury or death suffered. Nothing in Wis. Stat. § 632.32(2)(d) precludes insurers from affording coverage to only those insureds who are injured in an auto accident.

## IV. CONCLUSION

¶33 We conclude the circuit court properly granted State Farm's motion for summary judgment and the court of appeals erred in reversing it. The Policy affords UIM coverage to only an insured who sustained bodily injury caused by an accident involving an underinsured motor vehicle. Brey's father was not insured under the Policy. While Brey is an insured under the Policy, he was not involved in the accident in which his father was killed and therefore sustained no bodily injury. Wisconsin Stat. § 632.32(2)(d) plainly does not preclude an insurer from limiting UIM coverage to insureds who sustain bodily injury or death. With

respect to the car accident involving Brey's father, the Policy does not provide any UIM coverage for Brey nor does the law require it.

*By the Court.*—The decision of the court of appeals is reversed.