**2026 WI 19**

# Supreme Court of Wisconsin



KOBLE INVESTMENTS,
*Plaintiff-Respondent-Petitioner*,

*v.*

ELICIA MARQUARDT, et al.,
*Defendant*.

No. 2022AP182
Decided June 5, 2026

REVIEW of a decision of the Court of Appeals.
Marathon County Circuit Court (Lamont K. Jacobson, J.) No.
2020SC979

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which JILL J. KAROFSKY, C.J., and ANNETTE KINGSLAND ZIEGLER, REBECCA FRANK DALLET, BRIAN K. HAGEDORN, and JANET C. PROTASIEWICZ, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which ANNETTE KINGSLAND ZIEGLER, J., joined. SUSAN M. CRAWFORD, J., filed a concurring opinion.

¶1    REBECCA GRASSL BRADLEY, J.  Koble Investments ("Koble") sent its tenant, Elicia Marquardt, a notice terminating her residential lease for nonpayment of rent, in violation of the sixty-day moratorium on eviction notices ordered by Governor Tony Evers during the COVID-19

pandemic.[1] In response, Marquardt filed a counterclaim alleging Koble violated WIS. STAT. § 427.104(1)(j) (2021-22)[2] of the Wisconsin Consumer Act ("WCA"), which prohibits attempts to collect "an alleged debt arising from a consumer credit transaction or other consumer transaction . . . where there is an agreement to defer payment" and "with knowledge or reason to know that the right [to collect the debt] does not exist."[3] Marquardt also claimed the lease was void and unenforceable under WIS. STAT. § 704.44(10)[4] and WIS. ADMIN. CODE § ATCP 134.08(10) (June 2018)[5] because,

---

[1] The applicable portion of the emergency order reads: "1. Landlords are prohibited from serving any notice terminating a tenancy for failure to pay rent." Wis. Emergency Order #15, "Temporary Ban on Evictions and Foreclosures" (Mar. 12, 2020).

[2] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

[3] WIS. STAT. § 427.104(1)(j) provides, in pertinent part: "(1) In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction . . . where there is an agreement to defer payment, a debt collector may not:

. . .

(j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist.

[4] WIS. STAT. § 704.44 provides, in pertinent part: "Notwithstanding s. 704.02, a residential rental agreement is void and unenforceable if it does any of the following:

. . .

(10) Allows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property and the rental agreement does not include the notice required under s. 704.14."

[5] WIS. ADMIN. CODE § ATCP 134.08 provides, in relevant part: "Notwithstanding s. 704.02, Stats., a rental agreement is void and unenforceable if it does any of the following:

Marquardt maintained, the lease allowed Koble to terminate her tenancy "for a crime committed in relation to the rental property" but lacked the domestic abuse protections notice required by WIS. STAT. § 704.14[6], under which "a tenant has a defense to an eviction action" if the eviction action is based on conduct related to domestic abuse.

---

. . .

(10) Allows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property and the rental agreement does not include the notice required under s. 704.14, Stats."

[6] WIS. STAT. § 704.14 provides: "A residential rental agreement shall include the following notice in the agreement or in an addendum to the agreement:

**NOTICE OF DOMESTIC ABUSE PROTECTIONS**

(1) As provided in section 106.50 (5m) (dm) of the Wisconsin statutes, a tenant has a defense to an eviction action if the tenant can prove that the landlord knew, or should have known, the tenant is a victim of domestic abuse, sexual assault, or stalking and that the eviction action is based on conduct related to domestic abuse, sexual assault, or stalking committed by either of the following:

(a) A person who was not the tenant's invited guest.

(b) A person who was the tenant's invited guest, but the tenant has done either of the following:

　1. Sought an injunction barring the person from the premises.

　2. Provided a written statement to the landlord stating that the person will no longer be an invited guest of the tenant and the tenant has not subsequently invited the person to be the tenant's guest.

(2) A tenant who is a victim of domestic abuse, sexual assault, or stalking may have the right to terminate the rental agreement in certain limited situations, as provided in section 704.16 of the Wisconsin statutes. If the tenant has safety concerns, the tenant should contact a local victim service provider or law enforcement agency.

(3) A tenant is advised that this notice is only a summary of the tenant's rights and the specific language of the statutes governs in all instances."

¶2 Koble moved for dismissal of its eviction claim and admitted serving Marquardt the eviction notice during the prohibited period. The circuit court granted Koble's motion. While litigation over Marquardt's counterclaims remained pending, her attorney, James Miller, simultaneously moved to withdraw from representing Marquardt for failing to communicate with him, to intervene in the action, and to recover statutory attorney fees. The circuit court concluded the WCA does not apply to residential leases and the lease was not void or unenforceable under WIS. STAT. § 704.44(10) or WIS. ADMIN. CODE § ATCP 134.08(10) because the lease did not authorize eviction based on the commission of a crime against Marquardt. Because the court determined Marquardt was not entitled to recover any damages, it also concluded Attorney Miller had no interest in the action. Accordingly, the court denied Attorney Miller's motions to intervene and for attorney fees. In a later order, the court granted Attorney Miller's motion to withdraw and permitted him to intervene solely to appeal "the issues underlying the request for statutory" attorney fees and costs.

¶3 In a published decision, the court of appeals reversed the circuit court. For the first time since the legislature enacted the WCA in 1971, the court of appeals held that a residential lease is a "consumer transaction" with an "agreement to defer payment" governed by the WCA. *Koble Investments v. Marquardt*, 2024 WI App 26, ¶2, 412 Wis. 2d 1, 7 N.W.3d 915. Because Koble served Marquardt with an eviction notice during the COVID-19 eviction moratorium, the court concluded Koble violated WIS. STAT. § 427.104(1)(j) of the WCA. *Id.*, ¶28. The court also declared the lease void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) because Koble omitted the notice of domestic abuse protections required by WIS. STAT. § 704.14 while including a provision allowing Koble to terminate the lease "for a crime committed in relation to the rental property." *Id.*, ¶41. Accordingly, the court held that WIS. STAT. § 100.20(5) entitled Marquardt to recover double the damages caused by Koble's violation of § 704.44(10) and § ATCP 134.08(10), and Attorney Miller could recover reasonable attorney fees and costs under § 100.20(5) and WIS. STAT. § 425.308(1). *Id.*, ¶¶32, 50.

¶4      We reverse the court of appeals and hold that WIS. STAT. § 427.104 does not govern a residential lease under which rent is payable on a monthly basis because it is not an "agreement to defer payment." Additionally, even if the parties' lease were void and unenforceable, Marquardt failed to show Koble's violation of WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) caused her to suffer any pecuniary loss. Accordingly, neither Marquardt nor her attorney are entitled to recover any damages, costs, or attorney fees under either WIS. STAT. § 100.20(5) or WIS. STAT. § 425.308(1).

## I.  STANDARD OF REVIEW

¶5      The principal issue before this court is whether WIS. STAT. § 427.104 applies to a residential lease under which rent is payable on a monthly basis. We also consider whether the parties' lease is statutorily void and unenforceable, and if so, whether Marquardt may recover statutory damages and whether Marquardt or Attorney Miller may recover attorney fees and costs. "The interpretation and application of statutes present questions of law that we review independently, benefitting from the analyses of the circuit court and court of appeals." *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1 (quoting *Eau Claire Cnty. Dep't of Hum. Servs. v. S.E.*, 2021 WI 56, ¶13, 397 Wis. 2d 462, 960 N.W.2d 391).

¶6      "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language." *Id.* "[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *Id.*, ¶45 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citing *Bruno v. Milwaukee Cnty.*, 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656). Because "[s]tatutory interpretation centers on the 'ascertainment of meaning,' not the recitation of words in isolation[,]" we

interpret the text "in the context in which it is used . . . ." *Brey*, 400 Wis. 2d 417, ¶13 (citing *Kalal*, 271 Wis. 2d 633, ¶¶46–47).

## II.  ANALYSIS

### A.  Wis. Stat. § 427.104 DOES NOT APPLY TO RESIDENTIAL LEASES UNDER WHICH RENT IS PAYABLE ON A MONTHLY BASIS.

¶7      The WCA prohibits debt collectors from engaging in certain conduct while "attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction . . . where there is an agreement to defer payment." WIS. STAT. § 427.104. As relevant in this case, § 427.104 bars "a debt collector" from attempting "to enforce a right with knowledge or reason to know that the right does not exist." § 427.104(1)(j). Marquardt alleged Koble violated § 427.104 by trying to evict her during an eviction moratorium ordered by the governor, which suspended landlords' right to serve a notice terminating a tenancy for nonpayment of rent. Marquardt argued a reasonably prudent landlord should have known the moratorium temporarily barred eviction notices, especially since Koble filed the action seven weeks after the governor issued his executive order. Marquardt also maintained Koble violated the WCA by attempting to enforce a void lease. Section 427.104 governs Marquardt's claims only if a residential tenant is a "customer," as defined in WIS. STAT. § 421.301(17), and a residential lease constitutes both a "consumer transaction" as defined in § 421.301(13),[7] and "an agreement to defer payment," a phrase the WCA does not define.

---

[7] WIS. STAT. § 421.301 provides, in relevant part:

. . .

(13) "Consumer transaction" means a transaction in which one or more of the parties is a customer for purposes of that transaction.

. . .

(17) "Customer" means a person other than an organization (s. 421.301 (28)) who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes or, for purposes

6

¶8      We need not determine whether Marquardt's residential lease is a "consumer transaction" under WIS. STAT. § 427.104(1) because a residential lease under which rent is payable on a monthly basis is not "an agreement to defer payment." To "defer" means to delay or "to put off (a matter or person to be dealt with) deliberately to a future time." *Defer*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 591 (1986). The word "payment" denotes "the discharge of a debt or an obligation." *Payment*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1659 (1986). Under the plain meaning of § 427.104(1), an agreement to "defer payment" is an agreement to delay or put off the discharge of a debt or an obligation. A tenant's obligation to pay rent under a typical residential lease accrues monthly; therefore, a tenant does not owe all future monthly rent payments upon execution of the lease. Upon signing a residential lease under which rent is payable on a monthly basis, the tenant and the landlord have not agreed to defer payment of rent. The court of appeals erred in concluding otherwise.

¶9      On its own motion, the court of appeals ordered the parties to file supplemental briefs addressing whether there was "an agreement to defer payment" under WIS. STAT. § 427.104. Although the court acknowledged "Marquardt was not required to pay the full amount of rent for the entire twelve-month period upon signing the lease" and instead "agreed to pay monthly rent . . . on the first day of each month" the court nevertheless construed the lease as an agreement "that [Marquardt] could defer payment, paying for the contracted term in twelve equal installments." *Koble*, 412 Wis. 2d 1, ¶¶18–19. The court seemed to reason that because Marquardt signed a one-year lease, she somehow incurred a debt equal to twelve months' rent upon signing, and Koble "permitted" her "to pay one-twelfth of that amount each month." *Id.*, ¶22. That is not how residential leases work.

---

of ch. 427 only, for agricultural purposes. A person other than a customer may agree to be governed by chs. 421 to 427 with respect to all aspects of a transaction and in such event such person shall be deemed a customer for all purposes of chs. 421 to 427 with respect to such transaction.

7

¶10    "In Wisconsin, a landlord is entitled to recover rent as it matures, not before." *Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 65, 520 N.W.2d 99 (Ct. App. 1994) (citing *Schaaf v. Nortman*, 19 Wis. 2d 540, 547, 120 N.W.2d 654 (1963)). Because a tenant is obligated to pay only the first month's rent when the term of a typical residential lease begins, no future monthly rent payments are deferred. The obligation to pay rent for successive months accrues only during each successive month. Logically, an obligation that does not yet exist cannot be deferred.

¶11    *Schaaf* illustrates the point. In that case, the tenant, Nortman, quit paying rent on his leased apartment in November 1960. *Schaaf*, 19 Wis. 2d at 542. Nortman moved out of the apartment four months later, in March 1961. *Id.* at 540–42. Nortman claimed he was constructively evicted and moved into a house he had recently purchased. *Id.* at 541–42, 546. The landlord, Schaaf, sued for unpaid rent. *Id.* at 540. This court determined Schaaf was entitled to recover unpaid rent—but only the rent due under the lease through December 1st, the month in which the trial started. *Id.* at 546–47. Schaaf could not recover rent for the remainder of the lease's term, because his right to be paid rent beyond December 1st had not yet accrued. The court held that Schaaf would have to file a new claim to recover any unpaid rent after Nortman's obligation to pay it had accrued during each of the remaining months under the lease term. *Id.* at 547.

¶12    In so holding, this court recognized that a tenant's obligation to pay rent under a typical residential lease accrues on a monthly basis. Because a tenant is not obligated to pay—upfront—all rent that will become due during the entire lease term, the obligation to pay rent each month is best understood as "a contemporaneous exchange of consideration"—one month of rent for one more month of occupancy. *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005). A rent payment buys a tenant the right to continue occupying the premises for the coming month. *Id.* Because "[a] tenant's responsibility to pay the total amount of rent due" over the course of the lease term "does not arise at the moment the lease is signed[,]" no debt or obligation is deferred. *Id.*

¶13 The court of appeals in this case erroneously adopted Attorney Miller's argument[8] that "the parties mutually agreed that [Marquardt] could defer payment, paying for the contracted term in twelve equal installments, payable the first of each month." *Koble*, 412 Wis. 2d 1, ¶19. A residential lease is not an installment contract. Contrary to the court of appeals' analysis, Koble did not "permit" Marquardt "to pay one-twelfth of" the total amount of rent due for her one-year lease "each month." *Id.*, ¶22. Instead, the lease obligated Marquardt to pay rent only on a monthly basis, in exchange for which Marquardt received the exclusive right to occupy the property during the month for which she paid. Upon signing the lease, Marquardt did not incur the obligation to pay—upfront—the total amount of rent that would become due during the lease term; accordingly, the parties did not agree to "defer" any payment.

¶14 Construing the language of WIS. STAT. § 427.104(1), the court of appeals seemingly drew a distinction between a "consumer credit transaction" under which a creditor defers a customer's payment of debt, and "other consumer transaction" in which a customer does not incur debt but there is nonetheless "an agreement to defer payment." *Koble*, 412 Wis. 2d 1, ¶21. The court reasoned the distinction was necessary to avoid rendering the phrase "other consumer transaction" surplusage. *Id.* According to the court of appeals, if an agreement to defer payment always created a debt, then the agreement would constitute a "consumer credit transaction," leaving the phrase "other consumer transaction" without a purpose. *Id.* Contrary to the court of appeals' reasoning, we need not draw illusory distinctions between "agreements to defer payment" and

---

[8] Because Marquardt did not appear as a party before the court of appeals, Attorney Miller was the only appellant after the circuit court granted his motion to intervene. When the circuit court asked Koble if it had "any objection to [Attorney Miller's] request to intervene for the sole purposes of the attorney fees," Koble said it had no objection and his intervention was "fine." Koble has not challenged the propriety of Attorney Miller's intervention or participation in this matter, so we do not address it. *State v. Dowdy*, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691.

"agreements to defer payment 'of debt'" to give effect to both phrases, which are statutorily defined.

¶15    A "consumer credit transaction" is "a consumer transaction" in which property "is acquired on credit," meaning a creditor grants a customer the right "to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis." WIS. STAT. § 421.301(10), (14). "Time price basis" means the customer pays "a higher overall price because finance charges are applied." Ralph C. Anzivino, *The Wisconsin Consumer Act: When Is a Transaction a Consumer Credit Transaction?*, 96 MARQ. L. REV. 205, 221 (2012). A "consumer transaction" means "a transaction in which one or more of the parties is a customer for purposes of that transaction." § 421.301(13). Every "consumer credit transaction" is a "consumer transaction" but a "consumer transaction" encompasses more than just "consumer credit transaction[s]."

¶16    In WIS. STAT. § 427.104(1), the legislature applied the prohibited practices portion of the WCA to both "consumer credit transaction[s]"—which by definition include the deferral of payment—and "other consumer transaction[s] . . . where there is an agreement to defer payment[.]" We need not look beyond the definitions of each phrase to determine whether § 427.104 applies to residential leases under which rent is payable on a monthly basis, because, as explained at length, such a lease does not constitute an agreement to defer payment.  Instead, the tenant purchases occupancy on a monthly basis, and in exchange the landlord supplies the premises the tenant occupies on a monthly basis. The tenant pays separately for each month of occupancy, and the law does not allow the landlord to receive rent payments in advance.  Because a residential lease under which rent is payable on a monthly basis is not "an agreement to defer payment," § 427.104 does not apply.

¶17    Related Wisconsin statutes and administrative regulations illustrate the flaws in the court of appeals' analysis. The Wisconsin Administrative Code treats residential leases differently than consumer debt. If upon executing a residential lease a tenant incurred the obligation to pay the entire amount of rent payable during the lease term, she would be able to make payments in advance, but in Wisconsin, "rent payments in excess of 1 month's prepaid rent" are to be held as a "security deposit" and

not treated as a payment of the obligation owed to the landlord. WIS. ADMIN. CODE § ATCP 134.02(11) (June 2018). By law, a lease cannot "accelerate" a tenant's rent payments in the "event of tenant default or breach of obligations under the rental agreement." WIS. STAT. § 704.44(3m); WIS. ADMIN. CODE § ATCP 134.08(3). Even if a residential tenant defaults in payment of rent, the landlord must make "reasonable efforts" to rent the premises to someone else, and the amount of the landlord's recovery of damages from the defaulting tenant "is reduced by the net rent obtainable by reasonable efforts to rerent the premises." WIS. STAT. § 704.29(2). Wisconsin law thereby prevents landlords from collecting rent for months in which the tenant has yet to occupy the premises. By law, a residential lease cannot, therefore, constitute an "agreement to defer payment" under WIS. STAT. § 427.104(1).

¶18     Statutes and regulations concerning the same subject matter are read together, and we seek to interpret related statutes harmoniously. "[L]aws addressing the same subject should be interpreted harmoniously, if possible." *CED Props., LLC v. City of Oshkosh*, 2018 WI 24, ¶24, 380 Wis. 2d 399, 909 N.W.2d 136 (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 252 (2012) ("[L]aws dealing with the same subject—being *in pari materia* (translated as 'in a like matter')—should if possible be interpreted harmoniously.")); *Winebow, Inc. v. Capitol-Husting Co.*, 2018 WI 60, ¶30 n.6, 381 Wis. 2d 732, 914 N.W.2d 631 (courts should read statutes and regulations concerning the same subject matter *in pari materia*). "Several acts *in pari materia*, and relating to the same subject, are to be taken together, and compared in the construction of them, because they are considered as having one object in view, and as acting upon one system." *James v. Heinrich*, 2021 WI 58, ¶19, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting SCALIA & GARNER, *supra*, at 252 (2012) (quoting 1 JAMES KENT, COMMENTARIES ON AMERICAN LAW 433 (1826))). Collectively reading the statutes and regulations pertaining to residential leases precludes a construction of such leases as agreements to defer payment.

¶19     The history of the enforcement and application of the WCA bolsters the conclusion that WIS. STAT. § 427.104 does not cover residential leases. A long-standing and unbroken understanding and application of a law by those charged with executing it is "very strong, if not conclusive, evidence of its true meaning and application . . . ." *Scanlan v. Childs*, 33

Wis. 663, 666 (1873). Interpretative departures from the unbroken historical understanding of the statute "would be a surprise to the legal profession, as well as the business community" and are therefore disfavored. *Id*. at 665–66. Interpreting a law in a manner that "has never been the understanding or practice" under it for more than fifty years is a strong signal the interpretation is wrong. *Id.* (discussing the application of excise laws that had "remained substantially the same" for more than twenty years).

¶20     Despite a substantial body of cases resolving landlord-tenant disputes, Attorney Miller has not identified a single case—in the five decades since the WCA was enacted—in which a court applied the WCA to a residential lease. The agency charged with enforcing the WCA, the Department of Financial Institutions ("DFI"), has promulgated only one regulation mentioning leasehold interests in real property. *See* WIS. ADMIN. CODE § DFI-WCA 1.05 (July 2007). That regulation excludes a "leasehold interest in real property" from the definition of a "consumer lease" under the WCA. *Id.* The regulation explicitly states: "For laws governing the leasing of real estate see ch. 704, Stats," not ch. 427, Stats (the WCA). *Id.* The agency charged with regulating residential leasing, the Department of Agriculture, Trade and Consumer Protection ("DATCP"), does not cite the WCA anywhere for its authority to regulate residential leasing. This longstanding, unquestioned understanding and practice of the law reinforces our conclusion that WIS. STAT. § 427.104 does not apply to residential leases.

¶21     "It is not unimportant to state, that the construction which we have given to the terms of the act, is that which is understood to have been practically acted upon by the government, as well as by individuals, ever since its enactment." *United States v. State Bank of N.C.*, 31 U.S. (6 Pet.) 29, 39 (1832); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024) (quoting *Edwards' Lessee* v. *Darby*, 25 U.S. (12 Wheat.) 206, 210 (1827)) ("[I]n the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."); *Baldwin v. United States*, 589 U.S. 1231, 1235 (2020) (Thomas, J., dissenting from denial of cert.) (observing that courts historically have applied "interpretive canons that accorded respect to certain contemporaneous, consistent interpretations of statutes by

executive officers"). No court has applied the WCA to residential leases in the fifty-four years after its enactment despite residential leases being frequently litigated. Neither the agency entrusted with enforcing the WCA nor the agency charged with regulating residential leasing consider the WCA a channel for regulating residential leases. Even if something in the text rendered our interpretation "susceptible of some doubt, so long an acquiescence in it would justify us in yielding to it as a safe and reasonable exposition." *State Bank of N.C.*, 31 U.S. at 39–40. As amici curiae in this case observed, the longstanding and uniformly understood boundaries of the WCA "could not now be disturbed without introducing a train of serious mischiefs." *Id.* at 39.

¶22     Chapter 704 of the Wisconsin Statutes governs residential leases; WIS. STAT. § 427.104 does not. Because Marquardt does not prevail under the WCA, neither she nor Attorney Miller are entitled to recover attorney fees or costs under WIS. STAT. § 425.308, which allows a customer to recover costs, expenses, and reasonable attorney fees in connection with the successful prosecution or defense of an action under the WCA. Having managed the mischief of grafting § 427.104 over the landlord-tenant relationship, we turn to Attorney Miller's claims for damages and attorney fees under WIS. STAT. § 100.20(5).

## B. DAMAGES UNDER Wis. Stat. § 100.20(5)

¶23     After determining the lease was void and unenforceable under WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10), the court of appeals concluded Marquardt could recover, under WIS. STAT. § 100.20(5), twice the amount of rent payments she made to Koble. *Koble*, 412 Wis. 2d 1, ¶¶49–50. Wisconsin Statute Section 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10) render void and unenforceable any lease that "[a]llows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property [when] the rental agreement does not include the [domestic abuse protection] notice required under s. 704.14." Koble does not dispute the lease omitted the notice required under § 704.14. The court of appeals said provisions in the lease (1) prohibiting Marquardt from knowingly permitting use of the premises for an unlawful purpose and (2) allowing Koble to terminate the lease if Marquardt breached a material provision, "would have allowed Koble to terminate

Marquardt's lease 'for a crime committed in relation to the rental property'" in violation of § 704.44(10). *Koble*, 412 Wis. 2d 1, ¶37.

¶24     Generally, the required notice of domestic abuse protections apprises tenants of the existence of a statutory defense to an eviction action if the tenant is a victim of domestic abuse, sexual assault, or stalking, and the eviction action is based on conduct related to one of those crimes. WIS. STAT. § 704.14(1). Koble acknowledges the lease did not include the required notice under § 704.14, but denies the lease allowed the eviction of Marquardt because of a crime committed against her, if she belonged to the statutorily protected class of victims. Koble argues the lease simply incorporated a duty already imposed on tenants under WIS. STAT. § 704.05(3), which says "[t]he tenant cannot use the premises for any unlawful purpose." Koble urges this court to adopt the circuit court's conclusion that if Marquardt had been the victim of one of the statutorily enumerated crimes, she would not have been in violation of the provision prohibiting her from permitting the use of the premises for an unlawful purpose because a victim obviously does not "permit" the crime against her.

¶25     We do not need to resolve this issue. Even if the lease were void and unenforceable, Marquardt cannot recover any damages under WIS. STAT. § 100.20(5) because she has not established that Koble's alleged violation of WIS. STAT. § 704.44 and WIS. ADMIN. CODE § ATCP 134.08(10) caused her any pecuniary loss.

¶26     WIS. STAT. § 100.20(5) says, "[a]ny person suffering pecuniary loss because of a violation by any other person of s. 100.70 or any order issued under this section may sue for damages therefor . . . and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." As we explained in *Shands v. Castrovinci*, 115 Wis. 2d 352, 357, 340 N.W.2d 506 (1983), § 100.20(2) authorizes DATCP to issue general orders forbidding unfair trade practices and WIS. ADMIN. CODE CH. ATCP 134 contains the administrative rules promulgated by DATCP pursuant to this authority, which govern the rights and duties of residential landlords and tenants. Accordingly, any tenant suffering a pecuniary loss because of a violation of Ch. ATCP 134 may

recover twice the amount of the loss, plus costs and a reasonable attorney fee.

¶27 Attorney Miller claims "Marquardt's pecuniary damages consisted of the payments she made under the void and unenforceable lease, including late fees and [Koble's] legal fees." With respect to Koble's legal fees, Attorney Miller says Koble "charged" Marquardt $114.50 for the filing fee Koble paid upon commencing its eviction action. Nothing in the record, however, proves Marquardt actually paid any late fees or Koble's filing fee. A person making a claim under WIS. STAT. § 100.20(5) must prove she actually paid for unauthorized charges. *Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 2009 WI App 65, ¶24, 318 Wis. 2d 802, 767 N.W.2d 394.

¶28 While Marquardt did pay rent, the law does not allow a tenant to occupy premises rent-free simply because the lease is void and unenforceable. The court of appeals concluded, without any analysis, that "Marquardt is entitled to recover all of the payments that she made under the void and unenforceable lease, without any offset for the value of the benefit that she received from living in the rental premises." *Koble*, 412 Wis. 2d 1, ¶49. The court reached this conclusion not by consulting or interpreting the law, but solely based on Koble's purported failure to respond to Attorney Miller's argument on the pecuniary damages issue. *Id.* Even if Koble had "conceded" the issue, the court's remedy must have some basis in law. Under Wisconsin law, a tenant occupying a premises under a void and unenforceable lease becomes a "periodic tenant" under WIS. STAT. § 704.01(2) obligated to pay rent on whatever basis she had been paying rent under the lease—in this case, on a monthly basis. *See* WIS. STAT. § 704.03(2).

¶29 Attorney Miller argues a tenant has shown "a per se pecuniary harm" whenever a court determines a lease is invalid "from its inception," but neither Marquardt nor Attorney Miller ever demonstrated how paying rent amounted to a loss, much less one caused by Koble's asserted violation of law. "[A] party asserting a pecuniary loss for the purposes of WIS. STAT. § 100.20(5) must show that there is a causal connection between a prohibited trade practice . . . and the damage incurred." *Grand View Windows, Inc. v. Brandt*, 2013 WI App 95, ¶21, 349 Wis. 2d 759, 837 N.W.2d 611. Logically, Marquardt could not reasonably

argue the omission of the domestic abuse protections notice from the lease caused her to make rent payments. Marquardt enjoyed the benefit of the bargain she struck with Koble: She paid rent to Koble in exchange for Koble giving her exclusive occupancy of the premises. Neither Attorney Miller nor the court of appeals explained how Marquardt suffered any loss from paying rent in exchange for a place to live.

¶30     In the context of this case, WIS. STAT. § 100.20(5) requires proof that Marquardt suffered a pecuniary loss "because of" Koble's violation of WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10). Neither Marquardt nor Attorney Miller presented any proof of a pecuniary loss, much less a loss linked to Koble's asserted violation of law; accordingly, Marquardt cannot recover any damages or costs under § 100.20(5), nor can Attorney Miller recover attorney fees.

### III.  CONCLUSION

¶31     WISCONSIN STAT. § 427.104 does not apply to residential leases under which rent is payable on a monthly basis because they do not include "agreements to defer payment." Because § 427.104 does not apply to the parties' lease, Marquardt did not prevail in an action arising from a "consumer transaction" and neither she nor Attorney Miller may recover attorney fees or costs under WIS. STAT. § 425.308. Because Marquardt did not prove she suffered any pecuniary loss as a result of Koble's alleged violation of WIS. STAT. § 704.44(10) and WIS. ADMIN. CODE § ATCP 134.08(10), neither Marquardt nor Attorney Miller are entitled to recover any damages, costs, or attorney fees under WIS. STAT. § 100.20(5).

*By the Court.*—The decision of the court of appeals is reversed.

REBECCA GRASSL BRADLEY, J., with whom ANNETTE KINGSLAND ZIEGLER, J., joins, concurring.

¶32 The court resolves this case on the ground that WIS. STAT. § 427.104 does not apply to residential leases. While true, the court's narrow disposition leaves unanswered the question that impelled this court to grant review in this case: Whether the Wisconsin Consumer Act ("WCA") applies to residential leases *at all*. It doesn't, and the court should say so.

¶33 The court of appeals' application of the WCA to residential leases was obviously wrong and destabilized landlord-tenant law. This court should dispel any perception that the WCA could apply to a residential lease. Confining our decision to the applicability of WIS. STAT. § 427.104 leaves the landlord-tenant community and the executive branch with unnecessary uncertainty about the law.

¶34 A tenant in a residential lease is not a "customer" under the WCA, which applies only to "consumer transactions."[1] WIS. STAT. § 421.201(1). Under WIS. STAT. § 421.301(13), a "consumer transaction" must involve a "customer," which is defined as "a person . . . who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes . . . ." § 421.301(17). A tenant who signs a residential lease does not seek or acquire any of those things.

¶35 To acquire something means "to come into possession or ownership of; get as one's own." *Acquire*, RANDOM HOUSE UNABRIDGED DICTIONARY 18 (2d ed. 1993); *Acquire*, WEBSTER'S NEW DICTIONARY 6 (2003). A residential tenant does not get real property as the tenant's own. Instead, a tenant acquires the right to occupy real property for a period of time. WIS. STAT. § 704.01(1) (defining "Lease" as "an agreement . . . for transfer of *possession* of real property . . . for a definite period of time") (emphasis added). To make property one's own, a customer would need to obtain not only the right to possess the property but also the rights and obligations associated with ownership. Upon execution of a residential lease, the rights and obligations associated with ownership remain with the landlord. For

---

[1] The section also says the WCA applies to "consumer credit transactions," but consumer credit transactions are just a subset of consumer transactions. *See* WIS. STAT. § 421.301(10).

example, landlords retain the right to enter the property to inspect the premises and to make repairs. WIS. STAT. § 704.05(2). As the Wisconsin Realtors Association noted in its amicus brief, lessors of real property are subject to statutory maintenance obligations,[2] are required to pay property taxes and assessments, and must maintain insurance coverage. An owner of real property retains the right to sell or otherwise dispose of it. A lease does not transfer to tenants any ownership obligations or rights. In contrast, lessees of personal property often incur the obligations of ownership—such as maintaining and insuring the property.[3] Because a lessee of personal property assumes the obligations associated with ownership, a lessee takes the property as the lessee's own, albeit for a limited duration.

¶36 Because tenants do not acquire real property under a residential lease, they are not customers under the WCA. *See* WIS. STAT. § 421.301(17). Because tenants are not customers, residential leases are not "consumer transactions," and the WCA does not apply. *See* WIS. STAT. § 421.201(1). If this were not enough to settle the question, the WCA defines "consumer lease" as applying only to the lease of *goods*. § 421.301(11). Goods are "movable." § 421.301(21) (incorporating WIS. STAT. § 409.102(1)(ks)). Because real property is not "movable," a lease of real property cannot be a "consumer lease." Logically, residential leases cannot be covered by the WCA given their exclusion from the definition of a "consumer lease."

¶37 Nowhere in its text does the WCA mention residential leases, landlords, or tenants. This is not surprising, considering the legislature devoted an entire chapter of the statutory corpus to the landlord-tenant relationship in ch. 704, entitled "Landlord and Tenant." "The principle that

---

[2] *See* WIS. STAT. § 704.07, imposing on residential landlords the duty to "[m]ake all necessary structural repairs," § 704.07(2)(a)3., and keep premises in compliance with local housing codes, § 704.07(2)(a)5. *See also* WIS. STAT. § 704.44(8), voiding a lease that "[w]aives any statutory or other legal obligation on the part of the landlord . . . to maintain the premises during the tenant's tenancy."

[3] *See* WIS. STAT. § 411.218(5), permitting the parties to "determine that one or more parties have an obligation to obtain and, pay for insurance covering the goods . . . ." *See also* WIS. STAT. § 411.219, acknowledging the risk of loss may pass to a lessee.

a matter not covered is not covered is so obvious that it seems absurd to recite it." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012). The omission of residential leases from the WCA makes it so obvious the WCA does not cover residential leases that it does indeed seem absurd to have to say it.

¶38    The majority's refusal to say it will force the legislature to carefully consider and declare in the statutory text all that the law does not encompass.  The Omitted-Case Canon exists to relieve the legislature of this impossible task. *State v. Allison*, 2010 WI App 103, ¶23, 329 Wis. 2d 129, 789 N.W.2d 120 ("We do not require the legislature to list, exhaustively, every procedure that is not available . . . ."); *see also State ex rel. Lopez-Quintero v. Dittman*, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480 ("Nothing is to be added to what the text states or reasonably implies . . . That is, a matter not covered is to be treated as not covered.") (quoting SCALIA & GARNER, *supra*, at 93) (citation modified).

¶39    The WCA's enforcement history and application confirm the WCA does not apply to residential leases *at all*. Neither the Department of Financial Institutions ("DFI"), which enforces the WCA, nor the Department of Agriculture, Trade, and Consumer Protection, which regulates residential leases, have cited the WCA for authority to regulate residential landlord-tenant relations. Furthermore, DFI expressly says a residential lease of real property does not constitute a "consumer lease," and points to ch. 704 for laws governing the leasing of real estate.  WIS. ADMIN. CODE § DFI-WCA 1.05 (July 2007) ("Acquisition of a leasehold interest in real property by a customer from a merchant is not a consumer lease within the meaning of s. 421.301 (11), Stats. For laws governing the leasing of real estate see ch. 704, Stats."). In the five decades since the WCA was enacted, no court has applied the WCA to a residential lease. Majority op., ¶20.

¶40    The same reasoning underlying the court's conclusion that § 427.104 does not cover residential leases applies with equal force to the entire WCA. The history and application of the WCA verify its plain meaning: the WCA does not apply to residential leases. For the benefit of the public, the regulated community, and the executive branch, the court should say so.

SUSAN M. CRAWFORD, J., concurring.

¶41     The court decides this landlord-tenant dispute despite a fundamental defect in the appeal: there is no tenant. The tenant, Elicia Marquardt, whose name appears in the case caption, did not file this appeal. The majority adjudicates her rights in her absence. The appeal was filed solely by Marquardt's former attorney, James Miller, without her knowledge or consent, apparently seeking a decision that would require Koble Investments (Koble) to pay his attorney's fees. Miller lacked standing to appeal the issues presented here and in the court of appeals. For this reason alone, I would reverse the decision of the court of appeals without reaching the merits of the landlord-tenant issues presented by Koble and Miller, important though they may be.

¶42     A brief summary of the procedural history is helpful in understanding how and when this case went off the rails. Koble filed an eviction action against Marquardt during an ongoing 60-day moratorium on eviction notices during the COVID-19 pandemic. Marquardt retained Miller, who filed an answer and counterclaims. Recognizing its error, Koble voluntarily dismissed its eviction action. After the eviction action was dismissed, Marquardt did not appear for any subsequent court proceedings and, according to Miller, ceased communicating with him.

¶43     Prior to a hearing on the counterclaims, Miller moved to intervene on his own behalf to pursue an order for attorney's fees and to withdraw from representing Marquardt, if he was permitted to intervene. The circuit court commissioner denied the counterclaims and Miller's motion to intervene. Even though his communications with Marquardt had ceased, Miller requested a de novo hearing before the circuit court and renewed his motion to intervene and contingent motion to withdraw. The circuit court dismissed the counterclaims at the hearing de novo, but granted Miller's motions to intervene and to withdraw from representing Marquardt. Thereafter, Miller filed a notice of appeal solely on his own behalf. Marquardt herself did not appeal.

¶44     Notwithstanding that Marquardt did not appeal, the court of appeals reversed the circuit court's dismissal of her counterclaims. It held that Koble's lease with Marquardt violated the Wisconsin Consumer Act (WCA) and was void under WIS. ADMIN. CODE § ATCP 134.08(10). The court remanded the case to the circuit court for a determination of Marquardt's damages and reasonable attorney's fees, again

notwithstanding that Marquardt had not appealed her counterclaims and that Miller no longer represented her. Koble petitioned for review.

¶45     To appeal a judgment, an individual must be "aggrieved by the judgment." *Mut. Serv. Cas. Ins. Co. v. Koenigs*, 110 Wis. 2d 522, 527, 329 N.W.2d 157 (1983). This court recently stated that "to be aggrieved by a decision, one must have suffered an injury to a legally recognized interest as a result of the decision." *Brown v. WEC*, 2025 WI 5, ¶14, 414 Wis. 2d 601, 16 N.W.3d 619. The party aggrieved by the judgment in this case was the tenant, Marquardt. Miller was not personally aggrieved by the circuit court's rulings on his then-client's counterclaims.

¶46     Miller moved to intervene on his own behalf to assert a claim for attorney's fees under WIS. STAT. §§ 425.308 or 100.20(5) for Marquardt's counterclaims. But these fee-shifting provisions were never triggered because the circuit court dismissed Marquardt's counterclaims in their entirety. The situation presented here is highly unusual; I could find no case in any jurisdiction in which a court permitted an attorney *to appeal a former client's substantive claims*, in the hopes of ultimately obtaining a legal basis for the award of attorney's fees.

¶47     Miller would lack standing to appeal the order denying attorney's fees even if the circuit court had granted one of Marquardt's counterclaims but denied her request for attorney's fees. Under Wisconsin law, "statutory attorney's fees belong to the client and not the attorney." *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶30, 355 Wis. 2d 301, 849 N.W.2d 292. Under the WCA, "[i]f the customer prevails in an action arising from a consumer transaction, *the customer shall recover* . . . a reasonable amount for attorney fees." WIS. STAT. § 425.308(1) (emphasis added). Likewise, WIS. STAT. § 100.20(5) (emphasis added) provides "*[a]ny person suffering pecuniary loss* because of . . . any order issued under this section may sue . . . and shall recover . . . a reasonable attorney fee." If Marquardt had prevailed on her counterclaims, these provisions would explicitly award attorney's fees to her, not her attorney.[1]

---

[1] Although statutory attorney's fees are awarded to the client, the fee agreement between the attorney and client generally controls the ultimate disposition of the fees. *See Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 505, 577 N.W.2d 617 (1998). Miller entered a contingent fee agreement with Marquardt. Because he failed to recover any money for Marquardt, Marquardt owed him nothing. The fee agreement provides no arguable basis for Miller to

¶48     Nor does judicial policy provide any reason for us to grant standing to Miller to pursue Marquardt's substantive claims. Wisconsin courts treat "standing as a matter of judicial policy rather than as a jurisdictional prerequisite." *Schill v. Wis. Rapids Sch. Dist.*, 2010 WI 86, ¶38, 327 Wis. 2d 572, 786 N.W.2d 177. The purpose of our standing doctrine is two-fold: "[1] ensuring that the issues and arguments presented will be carefully developed and zealously argued," and "[2] informing the court of the consequences of its decision." *McConkey v. Van Hollen*, 2010 WI 57, ¶16, 326 Wis. 2d 1, 783 N.W.2d 855. When a plaintiff can fulfill these objectives as well as any other individual, judicial policy may counsel that the plaintiff has standing. *See id.*, ¶¶17–18.

¶49     The issues Miller raises on appeal relate to the legality of Koble's residential lease with Marquardt. These are not like constitutional claims affecting a broad swath of potential litigants who may have similar standing to sue. *See id.*, ¶18 (observing that if McConkey's challenge to a constitutional amendment were dismissed on standing grounds, another person who could more clearly demonstrate standing would likely bring an identical suit).

¶50     Judicial policy further counsels against granting standing to Miller to appeal claims personal to Marquardt because he failed to obtain her knowledge or consent to do so. At oral argument, I questioned Miller, who presented argument on his own behalf, about his communication with his former client:

Justice Crawford: Does she know you're here?

Miller: I don't know, your Honor.

Justice Crawford: Does she know there's a case in the Wisconsin Supreme Court with her name on it?

Miller: Well, as you've probably seen from the record she has not responded to any notices from the court.

---

independently pursue Marquardt's counterclaims or her claims for attorney's fees against Koble.

Justice Crawford: After the eviction action was dismissed, she stopped showing up, right?

Miller: Correct.

Justice Crawford: That would suggest that she got the remedy she was looking for?

Miller: Yes.

Oral Argument at 39:53, *Koble Invs. v. Marquardt*, 2022AP182, https://www.wicourts.gov/opinions/soralarguments.htm (last visited May 21, 2026) (search for case number 2022AP182 and click the playback link to download audio recording).

¶51     Thus, in his zeal to win an order requiring Koble to pay his fees, Miller completely disregarded his client's wishes. Permitting Miller to advance Marquardt's claims tacitly countenances Miller's violation of his professional responsibilities to his client. *See, e.g.*, SCR 20:1.2(a) (responsibility to abide by client's "decisions concerning the objectives of representation"), 1.4(a)(3) (duty to keep client reasonably informed about status of matter).

¶52     Koble, for its part, did not move to dismiss Miller's appeal based on Miller's lack of standing to raise issues on behalf of his former client. In this court, Koble's primary focus was overturning the court of appeals' decision granting Marquardt's counterclaims under the WCA and WIS. ADMIN. CODE ch. 134. Koble argued in the alternative, however, that Miller has "no independent right to recover attorney fees under WIS. STAT. §§ [100.20(5)] or 425.308(1) because he withdrew from representing Marquardt." Miller's only response is that Koble did not raise that argument in the court of appeals. While that is true, the error here is fundamental. Miller's lack of standing, coupled with Marquardt's absence, means that this court decides the rights of a party not before us.

¶53     Accordingly, I would hold that Miller lacks standing on appeal to assert Marquardt's claims against Koble as to the validity of her lease. *See Hartford Ins. Co. v. Wales*, 138 Wis. 2d 508, 522, 406 N.W.2d 426 (1987) (appellate court has jurisdiction to consider issue waived or forfeited by party if the interests of justice require). While the issues presented in this case are significant to both landlords and tenants, this court should not address them until a case with a proper party is before us. Miller is not such

a party. Marquardt's decision to walk away from the litigation after the eviction action was dismissed should be honored. The court of appeals' decision adjudicating the validity of Marquardt's counterclaims in her absence and without her consent should be reversed.

¶54 For the foregoing reasons, I respectfully concur in the mandate.